## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **ALTAVIA MATTHEWS, on behalf of** | ) | |
| **The Bradford Hammacher Group, Inc.** | ) | |
| **Employee Stock Ownership Plan, and on** | ) | |
| **Behalf of a class of all other persons** | ) | |
| **Similarly situated,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Case No. 16-cv-04773** |
| | ) | |
| **v.** | ) | **Hon. Gary Feinerman** |
| | ) | |
| **RELIANCE TRUST COMPANY,** | ) | |
| **A Delaware Corporation,** | ) | |
| | ) | |
| **Defendant.** | ) | |

### DEFENDANT'S ANSWER AND AFFIRMATIVE DEFENSES

Defendant, Reliance Trust Company ("Defendant"), by its undersigned attorneys,

respectfully submits its answer and affirmative defenses to Plaintiff's Complaint.

1.      Plaintiff brings this suit against Reliance Trust Company ("Reliance") under the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), § 502(a)(2), 29 U.S.C. § 1132(a)(2), for losses suffered by the ESOP and other relief under ERISA § 409, 29 U.S.C. § 1109, caused by Reliance, which was the Trustee for the ESOP when the ESOP acquired shares of The Bradford Hammacher Group, Inc. ("Bradford") in 2013 (the "ESOP Transaction").

**ANSWER**: Defendant admits that Reliance was the Trustee for the ESOP, that Plaintiff

purports to bring suit pursuant to ERISA, and that the ESOP acquired shares of Bradford, but

otherwise denies the allegations in this paragraph.


2.      Plaintiff is employed by Bradford, participates in the ESOP and is vested in the Bradford stock held in her account in the ESOP.

**ANSWER**:  Defendant admits that Plaintiff is a participant in the ESOP and is vested in her account under the ESOP, but denies that Plaintiff is employed by Bradford and otherwise denies the remaining allegations in this paragraph.

## FACTUAL ALLEGATIONS

3.      Bradford is headquartered at 9333 N. Milwaukee Avenue, Niles, Illinois 60714.

**ANSWER**:  Admitted.

4.      Bradford bills itself as "a world leader in direct to consumer marketing and product development."

**ANSWER**:      Denied. Answering further, Defendant states that the companies owned by Bradford bill themselves as "a world leader in direct to consumer marketing and product development."

5.      The ESOP was established by Bradford effective January 1, 2013.

**ANSWER**:  Admitted.

6.      The ESOP is a retirement plan governed by ERISA.

**ANSWER**:      Admitted.

7.      Bradford is the sponsor of the ESOP within the meaning of ERISA § 3(16)(B), 29 U.S.C. § 1002(16)(B).

**ANSWER**:      Admitted.

86787258.14

8.      The ESOP was administered by Bradford.

**ANSWER**:    Denied. Answering further, Defendant states that the ESOP is administered by an

ESOP Committee.

9.      Bradford appointed Reliance as Trustee of the ESOP in or about September 2013
for the purpose of representing the ESOP in the proposed ESOP Transaction.

**ANSWER**:    Denied. Answering further, Defendant states that it was engaged in August of

2013 pursuant to terms of an engagement agreement.

10.     As Trustee for the ESOP, Reliance had the exclusive duty to ensure that any
transactions between the ESOP, Bradford and Bradford shareholders, including loans to the
ESOP, acquisitions of Bradford stock by the ESOP, and subsequent transactions between them,
were fair and reasonable and to ensure that the ESOP paid no more than fair market value for
Bradford stock.

**ANSWER**: This paragraph contains legal conclusions to which no answer is required.  To the

extent this paragraph contains factual allegations, Defendant states that it acted consistently

with its fiduciary obligations under ERISA.

11.     On September 30, 2013, Reliance caused the ESOP to purchase all of the Class A
Common Stock of Bradford, 600,000 shares, from Bradford (and/or its principal shareholders) in
exchange for a note payable in the amount of $100,000,000 ("the ESOP Transaction").

**ANSWER**:    Defendant states that the Complaint purports to define "ESOP Transaction"

differently in paragraphs 1 and 11, and thus is ambiguous and confusing.  Answering further,

Defendant admits that as part of a transaction on September 30, 2013 (the "September 30, 2013

- 3 -

Transaction"), among other terms of the transaction the ESOP purchased from The Bradford Hammacher Group, Inc., and not from principal shareholders, 600,000 shares of The Bradford Hammacher Group, Inc.'s Class A Common Stock for a note payable in the amount of $100 million (the "ESOP Stock Purchase"). Defendant also refers to its allegations in its First Affirmative Defense: Exemptions from Prohibited Transactions.

    12.    Pursuant to the ESOP Transaction, Reliance caused the ESOP to pay $166.67 per share for the Bradford stock, for a total payment of approximately $100,000,000 for all of the shares.

**ANSWER**:  Defendant states that the Complaint purports to define "ESOP Transaction"

differently in paragraphs 1 and 11, and thus is ambiguous and confusing.  Defendant admits that

the ESOP Stock Purchase occurred, but otherwise denies the allegations in this paragraph.

Answering further, Defendant refers to its allegations in its First Affirmative Defense:

Exemptions from Prohibited Transactions.

    13.    Pursuant to the ESOP Transaction, Reliance caused the ESOP to issue a note payable to Bradford in the amount of $100,000,000 to purchase Bradford stock from Bradford.

**ANSWER**:  Defendant states that the Complaint purports to define "ESOP Transaction"

differently in paragraphs 1 and 11, and thus is ambiguous and confusing.  Defendant admits

that the ESOP Stock Purchase occurred, but otherwise denies the allegations in this paragraph.

Answering further, Defendant refers to its allegations in its First Affirmative Defense:

Exemptions from Prohibited Transactions.

- 4 -

14.     Reliance resorted to seller-financing because it was presumably unable to arrange bank financing for the ESOP Transaction. Any prospective commercial lender would have been troubled by the fact that the proposed ESOP Transaction would be 100% leveraged. Moreover, no reasonably prudent commercial lender would have financed the transaction at the $100- million- dollar amount without conducting robust due diligence on the loan to ensure that the collateral pledged, the stock, was actually worth $100 million.

**ANSWER**:  Defendant states that the Complaint purports to define "ESOP Transaction" differently in paragraphs 1 and 11, and thus is ambiguous and confusing.  Defendant denies the allegations in this paragraph.  Answering further, Defendant refers to its allegations in its First Affirmative Defense: Exemptions from Prohibited Transactions.

15.     The ESOP now owns all or substantially all of Bradford, along with its sister company, Hammacher Schlemmer & Company, Inc.

**ANSWER**:  Denied.  Answering further, Defendant states that the ESOP owns all or substantially all of The Bradford Hammacher Group, Inc.

16.     Although the ESOP acquired 100% of Bradford, it did not control Bradford. Instead, Reliance was subject to the direction of an ESOP Voting Committee. The ESOP Voting Committee was controlled by so-called Required Security Holders. On information and belief, the Required Security Holders were among the parties in interest that sold Bradford stock to the ESOP.

**ANSWER**:  Denied.

17.     After the ESOP acquired Bradford, Reliance caused or allowed Bradford to buy Bradford's 172,000-square-foot headquarters at 9333 N. Milwaukee Avenue in Niles, Illinois, from shareholders of Bradford for $8 million. These shareholders were the children (or their trusts) of one of the company's founders. Thus, although the ESOP owned 100% of Bradford, Reliance did not obtain control of Bradford and allowed Bradford to undertake million dollar transactions with parties in interest.

**ANSWER**:  Denied.  Answering further, Defendant states that as part of the September 30,

2013 Transaction, The Bradford Hammacher Group, Inc. purchased the real property located at

9333 North Milwaukee Avenue in Niles, Illinois from Old Colony Properties, Co.


18.     Indeed, the $8 million building purchase represented almost 20% of Bradford's
value based on a subsequent valuation on December 31, 2013.

**ANSWER**:  Denied.


19.     On December 31, 2013, just 92 days after the ESOP bought Bradford, the ESOP's
investment in Bradford common stock was worth $43,410,000.00, or just $72.35 per share—a
difference in value of approximately $56.5 million, or about 56%.

**ANSWER**:  Denied.


## JURISDICTION AND VENUE

20.     This action arises under Title I of ERISA, 29 U.S.C. §§ 1001 *et seq.,* and is
brought by Plaintiff under 29 U.S.C. § 1132(a) to enjoin acts and practices that violate the
provisions of Title I of ERISA, to require Reliance to make good to the ESOP losses resulting
from its violations of ERISA, and to restore to the ESOP any profits and fees made and received
by Reliance, and to obtain other appropriate equitable and legal remedies in order to redress
violations and enforce the provisions of Title I of ERISA.

**ANSWER**: Defendant admits that Plaintiff brings this claim pursuant to ERISA but otherwise

denies the allegations in this paragraph.


21.     This Court has subject matter jurisdiction over this action pursuant to ERISA
§ 502(e)(1), 29 U.S.C. § 1132(e)(1).

**ANSWER**:  Admitted.

22.     Venue is proper in this District pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because some or all of the events or omissions giving rise to the claims occurred in this District, the ESOP was administered in this District, Bradford is headquartered in this District, and Plaintiff lives in this district.

**ANSWER**:  Defendant lacks information sufficient to admit or deny where Plaintiff lives.

Defendant admits that Bradford is headquartered in this District and that venue is proper but

otherwise denies the allegations in this paragraph.


## PARTIES

23.     Plaintiff Altavia Matthews is a resident of Chicago, IL. At all relevant times, Matthews has been a Plan participant, as defined in ERISA § 3(7), 29 U.S.C. § 1002(7), and has been vested in Bradford common stock shares in her account in the ESOP.

**ANSWER**:  Defendant lacks information sufficient to admit or deny where Plaintiff lives.

Defendant admits that Plaintiff is a participant and is vested in her account under the ESOP but

otherwise denies the allegations in this paragraph.


24.     Defendant Reliance Trust Company is a trust company chartered in Georgia. Reliance was the Trustee of the ESOP during the 2013 ESOP Transaction. Reliance at all relevant times was a "fiduciary" under ERISA because it was named as the Trustee. As the Trustee, Reliance had exclusive authority to manage and control the assets of the ESOP and had sole and exclusive discretion to authorize the 2013 ESOP Transaction.

**ANSWER**:  Defendant states that the Complaint purports to define "ESOP Transaction"

differently in paragraphs 1 and 11, and thus is ambiguous and confusing.  Answering further,

Defendant admits that it is a trust company chartered under Georgia law, was the trustee of the

ESOP, and was a fiduciary solely to the extent it engaged in fiduciary acts.  Defendant denies

the remaining allegations in this paragraph.

86787258.14

## CLAIMS FOR RELIEF

## COUNT ONE

### Engaging in Prohibited Transactions Forbidden by ERISA §§ 406(a)-(b),

### 29 U.S.C. §§ 1106(a)-(b)

25.　　Plaintiff incorporates the preceding paragraphs as though set forth herein.

**ANSWER**:　Defendant incorporates its responses as though set forth herein.

26.　　Bradford was a party in interest to the ESOP because it is the employer whose employees are covered by the ESOP. ERISA § 3(14)(C), 29 U.S.C. § 1002(14)(C).

**ANSWER**:  Denied.

27.　　Reliance was a fiduciary for the ESOP because it was the Trustee responsible for deciding on behalf of the ESOP whether to engage in the ESOP transaction, the price to pay for Bradford stock, and the terms of the note payable to Bradford.

**ANSWER**: Defendant states that the Complaint purports to define "ESOP Transaction"

differently in paragraphs 1 and 11, and thus is ambiguous and confusing. Answering further,

Defendant states that it was a fiduciary for the ESOP solely to the extent it engaged in fiduciary

acts.  Defendant denies the remaining allegations in this paragraph.

28.　　ERISA § 406(a)(1)(B), 29 U.S.C. § 1106(a)(1)(B), prohibited a plan fiduciary, here Reliance, from causing a plan, here the ESOP, to borrow money from a party in interest, here Bradford (the plan sponsor).

**ANSWER**:  Denied.  Answering further, Defendant states that ERISA § 408(b)(3) provides

an exemption for a loan to an employee stock ownership plan if the loan is primarily for the

benefit of participants and beneficiaries of the plan and such loan is at an interest rate which

is not in excess of a reasonable rate, and ERISA § 408(b)(3) allows a plan to give collateral if

such collateral are qualifying employer securities.  ERISA § 408(e) provides an exemption

for the acquisition or sale by a plan of qualifying employer securities if such acquisition or

sale is for "adequate consideration," if no commission is charged with respect thereto, and if

the plan is an eligible individual account plan under ERISA § 1107(d)(3), which includes

employee stock ownership plans.

29.     ERISA § 406(a)(1)(E), 29 U.S.C. § 1106(a)(1)(E), prohibited Reliance from
causing the ESOP to acquire Bradford securities from Bradford and its principal shareholders
and transacting with Bradford.

**ANSWER**:  Denied.  Answering further, Defendant states that ERISA § 408(e) provides an

exemption for the acquisition or sale by a plan of qualifying employer securities if such

acquisition or sale is for "adequate consideration," if no commission is charged with respect

thereto, and if the plan is an eligible individual account plan under ERISA § 1107(d)(3),

which includes employee stock ownership plans.

30.     ERISA § 406(b)(2), (3), 29 U.S.C. § 1106(b)(2), (3), provides that a fiduciary for
a plan shall not-

> (2) in his individual or in any other capacity act in any transaction involving
> the plan on behalf of a party (or represent a party) whose interests are adverse
> to the interests of the plan or the interests of its participants or beneficiaries, or
> (3) receive any consideration for his own personal account from any party
> dealing with such plan in connection with a transaction involving the assets of
> the plan.

86787258.14

**ANSWER**: Defendant admits that Plaintiff quotes a portion of ERISA. Defendant denies any violation of ERISA or any other federal or state law. Answering further, Defendant states that ERISA § 408(b)(2) contains an exemption for contracting or making reasonable arrangements with a party in interest for services necessary for the establishing or operation of the plan, if no more than reasonable compensation is paid therefor. *See also* 29 CFR § 2550.408b-2.

31. In violation of ERISA § 406(b)(2), 29 U.S.C. § 1106(b)(2), in approving the ESOP transaction, Reliance acted for the benefit of Bradford in a transaction in which Bradford was adverse to the ESOP by approving a purchase price for Bradford stock that vastly exceeded its value.

**ANSWER**: Defendant states that the Complaint purports to define "ESOP Transaction" differently in paragraphs 1 and 11, and thus is ambiguous and confusing. Defendant otherwise denies the allegations in this paragraph.

32. In violation of ERISA § 406(b)(3), 29 U.S.C. § 1106(b)(3), in the course of the ESOP transaction, Reliance received payment from Bradford for serving as the Trustee on behalf of the ESOP with respect to the ESOP transaction.

**ANSWER**: Defendant states that the Complaint purports to define "ESOP Transaction" differently in paragraphs 1 and 11, and thus is ambiguous and confusing. Defendant denies the allegations in this paragraph. Answering further, Defendant states that ERISA § 408(b)(2) contains an exemption for contracting or making reasonable arrangements with a party in interest for services necessary for the establishing or operation of the plan, if no more than reasonable compensation is paid therefor. *See also* 29 CFR § 2550.408b-2.

33.     The loan and stock transactions between the ESOP and parties in interest, namely Bradford and its principal shareholders, were prohibited transactions.

**ANSWER**: Denied.  Answering further, Defendant states that ERISA § 408(b)(3) provides an exemption for a loan to an employee stock ownership plan if the loan is primarily for the benefit of participants and beneficiaries of the plan and such loan is at an interest rate which is not in excess of a reasonable rate, and ERISA § 408(b)(3) allows a plan to give collateral if such collateral are qualifying employer securities.

ERISA § 408(e) provides an exemption for the acquisition or sale by a plan of qualifying employer securities if such acquisition or sale is for "adequate consideration," if no commission is charged with respect thereto, and if the plan is an eligible individual account plan under ERISA § 1107(d)(3), which includes employee stock ownership plans.

ERISA § 408(b)(2) contains an exemption for contracting or making reasonable arrangements with a party in interest for services necessary for the establishing or operation of the plan, if no more than reasonable compensation is paid therefor. *See also* 29 CFR § 2550.408b-2.

34.     The loan and Bradford stock transactions between the ESOP and parties in interest were caused by Reliance in its capacity as trustee for the ESOP.

**ANSWER**:     Denied.

35.     ERISA § 408(e), 29 U.S.C. § 1108(e), provides a conditional exemption from the prohibited transaction rules for sale of employer securities to or from a plan if a sale is made for adequate consideration. ERISA § 3(18)(B), 29 U.S.C. § 1002(18)(B), defines adequate consideration as "the fair market value of the asset as determined in good faith by the trustee or named fiduciary." ERISA's legislative history and existing case law make clear that ERISA § 3(18)(B) requires that the price paid must reflect the fair market value of the asset, and the fiduciary must conduct a prudent investigation to determine the fair market value of the asset.

**ANSWER**: Defendant admits that Plaintiff quotes a portion of ERISA. Defendant denies any

violation of ERISA or any other federal or state law.

36. The statutory exemptions to ERISA's prohibited transaction provisions are affirmative defenses. *See, e.g., Braden v. Walmart Stores, Inc.,* 588 F.3d 585, 601 (8th Cir. 2009); *Howard v. Shay,* 100 F.3d 1484, 1489 (9th Cir. 1996); *Lowen v. Tower Asset Mgmt., Inc.,* 829 F.2d 1209, 1215 (2d Cir. 1987); *Donovan v. Cunningham,* 716 F.2d 1455, 1567-68 (5th Cir. 1983).

**ANSWER**: This paragraph states a legal conclusion to which no answer is required.

37. ERISA § 409, 29 U.S.C. § 1109, provides, *inter alia,* that any person who is a fiduciary with respect to a plan and who breaches any of the responsibilities, obligations, or duties imposed on fiduciaries by Title I of ERISA shall be personally liable to make good to the plan any losses to the plan resulting from each such breach, and additionally is subject to such other equitable or remedial relief as the court may deem appropriate, including removal of the fiduciary.

**ANSWER**: Defendant admits that Plaintiff references a portion of ERISA. Defendant denies

any violation of ERISA or any other federal or state law.

38. ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), permits a plan participant to bring a suit for relief under ERISA § 409.

**ANSWER**: This paragraph states a legal conclusion to which no answer is required.

39. Reliance caused and is liable for millions of dollars of losses suffered by the ESOP as a result of the prohibited transactions in an amount to be proven more specifically at trial.

**ANSWER**: Denied.

## CLASS ACTION ALLEGATIONS

40.     Plaintiff brings this action as a class action pursuant to Fed. R. Civ. P. 23(a) and (b), on behalf of the following class:

> All persons who were participants in The Bradford Hammacher Group, Inc. Employee Stock Ownership Plan. Excluded from the Plaintiff Class are the officers and directors of The Bradford Hammacher Group, Inc. and legal representatives, successors, and assigns of any such excluded persons.

**ANSWER**:  Defendant admits that Plaintiff purports to bring this lawsuit as a class action,

but denies that a class action is appropriate in this case or under ERISA 502(a)(2).

41.     The Plaintiff Class is so numerous that joinder of all members is impracticable. Although the exact number and identities of Class Members are unknown to Plaintiff at this time, the ESOP's Form 5500 filing for 2014 indicates that there were 656 active participants in the ESOP as of December 31, 2014.

**ANSWER**:     This paragraph states a legal conclusion to which no answer is required.

Answering further, Defendant denies that a class action is appropriate in this case or under

ERISA 502(a)(2).

42.     Questions of law and fact common to the Plaintiff Class as a whole include, but are not limited to, the following:

> i.    Whether Reliance was a fiduciary under ERISA for the ESOP;
>
> ii.   Whether Reliance's fiduciary duties under ERISA included serving as Trustee for the ESOP in the ESOP's acquisition of Bradford stock;
>
> iii.  Whether Reliance engaged in a prohibited transaction under ERISA by permitting the ESOP to purchase Bradford stock for more than adequate consideration;
>
> iv.   Whether Reliance engaged in a good faith valuation of the Bradford stock in connection with the ESOP transaction;
>
> v.    Whether Reliance engaged in a prudent valuation of the Bradford stock in connection with the ESOP transaction; and
>
> vi.   The amount of losses suffered by the ESOP and its participants as a result of Reliance's ERISA violations.

- 13 -

**ANSWER**:    Denied.

43.    Plaintiff's claims are typical of those of the Plaintiff class. For example, Plaintiff, like other ESOP participants in the Plaintiff Class, suffered a diminution in the value of her ESOP account because the ESOP plunged in value after purchasing Bradford stock for more than fair market value, and she continues to suffer such losses in the present because Reliance failed to correct the overpayment by the ESOP in its time as trustee.

**ANSWER**:  Denied.

44.    Plaintiff will fairly and adequately represent and protect the interests of the Plaintiff class. Plaintiff has retained counsel competent and experienced in complex class actions, ERISA, and employee benefits litigation.

**ANSWER**:  Denied.

45.    Class certification of Plaintiff's Claims for Relief for violations of ERISA is appropriate pursuant to Fed. R. Civ. P. 23(b)(1) because the prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications which would establish incompatible standards of conduct for Reliance, and/or because adjudications with respect to individual Class members would as a practical matter be dispositive of the interests of non-party Class members.

**ANSWER**:  Denied.

46.    In addition, Class certification of Plaintiff's Claims for Relief for violations of ERISA is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because Reliance has acted or refused to act on grounds generally applicable to the Class, making appropriate declaratory and injunctive relief with respect to Plaintiff and the Class as a whole. The members of the Class are entitled to declaratory and injunctive relief to remedy Reliance's violations of ERISA.

**ANSWER**:  Denied.

47.     The names and addresses of the Plaintiff Class are available from the ESOP. Notice will be provided to all members of the Plaintiff Class to the extent required by Fed. R. Civ. P. 23.

**ANSWER**:  Defendant admits that plan participants are identifiable.  Defendant states that whether notice is appropriate under federal law is a legal question to which no answer is required. Defendant denies the remaining allegations in this paragraph.

**Wherefore, Defendant respectfully requests that this Court enter judgment in its favor.**

## DEFENDANT'S AFFIRMATIVE DEFENSES

## FIRST AFFIRMATIVE DEFENSE:  EXEMPTIONS FROM PROHIBITED TRANSACTIONS.

1.     Plaintiff's ERISA § 502(a)(2) claim for a prohibited transaction under ERISA §§ 406(a)(1)(B), 406(a)(1)(E), 406(b)(2), (3),  fails because the September 30, 2013 Transaction, loan to the ESOP, and compensation to Reliance are exempt pursuant to one or more of the following exemptions:

    a.  ERISA § 408(b)(3) provides an exemption for a loan to an employee stock ownership plan if the loan is primarily for the benefit of participants and beneficiaries of the plan and such loan is at an interest rate which is not in excess of a reasonable rate, and ERISA § 408(b)(3) allows a plan to give collateral if such collateral are qualifying employer securities.

    b.  ERISA § 408(e) provides an exemption for the acquisition or sale by a plan of qualifying employer securities if such acquisition or sale is for "adequate consideration," if no commission is charged with respect thereto, and if the

- 15 -

plan is an eligible individual account plan under ERISA § 1107(d)(3), which

includes employee stock ownership plans.

    c.    ERISA § 408(b)(2) contains an exemption for contracting or making

reasonable arrangements with a party in interest for services necessary for the

establishing or operation of the plan, if no more than reasonable compensation

is paid therefor. *See also* 29 CFR § 2550.408b-2.

2.        ERISA § 3(18)(B) defines adequate consideration as "the fair market value of the

asset as determined in good faith by the trustee or named fiduciary."

3.        Pursuant to 29 CFR 2550.408e, adequate consideration for purposes of ERISA §

408(e) means:

> (2) In all other cases, a price not less favorable to the plan than the price determined under section 3(18) of the Act.

4.        On information and belief, sometime around March 2013, various companies

referred to as The Bradford Group and Hammacher, Schlemmer & Co., Inc. ("The

Bradford/Hammacher Entities") began considering ownership transition alternatives, including

transitioning to 100% ESOP-owned structure in which one entity would become a parent entity

(the "New Parent Entity") of the other companies by way of mergers and stock

purchases/redemptions from selling shareholders, and the New Parent Entity would become

100% ESOP-owned.

5.        On or about August 9, 2013, Reliance Trust Company was engaged to serve as

trustee in connection with a potential transaction.  Pursuant to an engagement agreement dated

July 20, 2013 (executed on August 9, 2013), which was drafted by Reliance on Reliance

letterhead, Reliance assumed fiduciary responsibility as Trustee of the ESOP pursuant to the

terms of the engagement agreement and solely with respect to fiduciary acts.

6.    Reliance engaged Stout Risius Ross ("SRR") as an independent financial advisor to Reliance as Trustee of the ESOP.   Reliance also engaged McDermott, Will & Emery ("MWE") as counsel for Reliance as Trustee of the ESOP.

7.    Shortly after Reliance was retained as Trustee of the ESOP, Reliance and its independent advisors SRR and MWE began performing significant due diligence and analysis with respect to a potential transaction.

8.    At a meeting on August 21, 2013, five Reliance representatives met with representatives from SSR and MWE.  At that meeting, Reliance, SRR, and MWE discussed in detail a potential transaction and its terms at length for the purposes of determining whether the transaction would be fair to the ESOP.   Issues addressed included, among other issues: (a) The Bradford/Hammacher Entities, their business lines, their finances, sales projections, customer and client bases, sales trends, and other financial issues; (b) the potential terms of  The Bradford/Hammacher Entities' stock purchases/redemptions from selling shareholders; (c) negotiations over transaction terms; (d) different valuation methods for The Bradford/Hammacher Entities' enterprise equity valuation; (e)  financing and market rates for interest on "sub-debt" loans  and a strategy for negotiating a lower interest rate for the ESOP; and (f) the amount the ESOP would then pay for shares of the New Parent Entity.

9.    Reliance also discussed specifically the impact, if any, the potential purchase of real estate in Niles, Illinois might have on the transaction value from the standpoint of the ESOP. One or more of The Bradford/Hammacher Entities also had been leasing the space in Niles, Illinois, and purchasing the real estate was a financially prudent decision in lieu of continuing to lease the same property without ownership.

- 17 -

10.     Reliance did not base its decisions upon conclusions or opinions of The Bradford/Hammacher Entities or their advisors as to the terms of a potential transaction. SRR performed its own valuation and financial analysis for Reliance and on behalf of the ESOP, using its own methods, in order to determine the Fair Market Value of the stock the ESOP was considering purchasing from the New Parent Entity and whether other terms of the transaction were fair to the ESOP.

11.     At the August 21, 2013 meeting, Reliance, SRR, and MWE determined that Reliance should negotiate for more-favorable terms.  Although terms  the counter-parties had proposed were within the range of reasonable terms after Reliance and its advisors performed their own, independent analyses, Reliance, SRR, and MWE discussed approaches to negotiating even more-favorable transaction terms from the standpoint of the ESOP.

12.     Reliance instructed SRR to negotiate on behalf of the ESOP for, among other things, more favorable interest rates for the ESOP and other terms of the transaction.

13.     In addition, Reliance informed SRR and MWE that before Reliance would agree to certain potential value ranges for The Bradford/Hammacher Entities, Reliance needed an additional level of approval at Reliance.  The Reliance Fiduciary Committee would have to be consulted for further input before Reliance might agree to a range of higher potential value amount.

14.     After the August 21, 2013 meeting, Reliance actively negotiated for more-favorable terms from the standpoint of the ESOP, and Reliance and the counter-parties exchanged *four* counteroffers.

15.     On August 22, 2013, Reliance rejected the counter-parties' initial proposal and offered a counter-offer with more-favorable terms from the standpoint of the ESOP.

- 18 -

16.     On August 23, 2013, the counter-parties rejected Reliance's August 22, 2013 proposal and presented a counteroffer.

17.     On August 25, 2013, Reliance rejected the counter-parties' August 23, 2013 proposal and presented a counteroffer with more-favorable terms from the standpoint of the ESOP.

18.     On August 26, 2013, Verit sent a counteroffer with principal terms that were more favorable to the ESOP than Verit's initial proposal, still within the range of fair and reasonable terms for the potential transaction.  Thus, through its robust due diligence and active negotiation process, Reliance was able to obtain favorable terms from the standpoint of the ESOP.

19.     Reliance also negotiated other terms of the transaction, with Reliance and the counter-parties revising and negotiating additional terms in the transaction documents.

20.     At a September 25, 2013 meeting, the ESOP Committee of Reliance met with representatives from SSR and MWE.  Seven people participated on behalf of Reliance, three people on behalf of SSR, and four people on behalf of MWE.

21.     During that September 25, 2013 meeting, the attendees again discussed the potential transaction terms, including detailed discussions of remaining terms yet to be agreed upon, including terms in the transaction documents themselves.

22.     Reliance again instructed its advisors to negotiate for additional, more-favorable terms from the standpoint of the ESOP.

23.      Reliance also discussed with its advisors whether there were any changes to SSR's approach or conclusions reflected in SRR's August 21, 2013 presentation.  SRR explained that that there were no material changes.

24.     During the September 25, 2013 meeting, SSR also discussed its Solvency Analysis, and Reliance actively inquired into SSR's analysis and conclusions.   SSR also noted that it used a "far more conservative" analysis than that "provided by [The Bradford/Hammacher Entities] management."

25.     Based on the robust and extensive inquiry and analysis by Reliance and its advisors, Reliance determined that certain transaction terms were fair from the standpoint of the ESOP, including the ESOP's purchase of 600,000 shares of Common Stock of The Bradford Hammacher Group, Inc., as controlling shareholder of the other Bradford/Hammacher Entities, for $100,000,000, subject to other terms, conditions, and limitations in the transaction documents and that remained to be negotiated.

26.     After lengthy discussion, Reliance approved a potential transaction conditionally, subject to further negotiation and resolution of certain issues that Reliance identified at the September 25, 2013 meeting.

27.     SRR prepared for Reliance an Analysis of Transaction Fairness document, Solvency Analysis, and opinion letter.

28.     After reviewing the analyses of its advisors, asking questions about their assumptions, approaches, and conclusions, performing extensive due diligence, directing advisors to areas of further inquiry, and actively negotiating for more-favorable terms from the ESOP's perspective, Reliance determined that a transaction based on the analysis and evaluation would be fair from the standpoint of the ESOP.

29.     The September 30, 2013 Transaction included the involvement of several commercial lenders that were performing their own, independent due-diligence analysis of the transaction.  Bank of America and The PrivateBank and Trust Company acted as lead banks for a

- 20 -

consortium of lenders that included Harris and MB Financial/Cole Taylor, and the lead banks were actively involved in the September 30, 2013 Transaction, including in connection with the negotiations of a revolving credit facility. The banks were aware that the September 30, 2013 Transaction would be 100% leveraged. The lead banks performed robust due diligence and entered into lending and credit agreements with the New Parent Entity, The Bradford Hammacher Group, Inc., and ten affiliated corporations.

30.     The financing structure for the September 30, 2013 Transaction, in which commercial lenders entered into lending and credit agreements with the selling company (and affiliates), and the ESOP issued a note to selling company in exchange for stock, is an accepted structure used in similar transactions involving ESOP purchases of stock from companies.

31.     After the September 30, 2013 Transaction closed, the ESOP received a contribution for 2013 in the amount of $4,438,521. The ESOP Trust then paid $2,500,000 of principal and $1,938,521 of interest, even though this payment was not actually due until September 2014. This reduced the balance of the ESOP loan after interest to $97,500,000.

32.     The parties to the September 30, 2013 Transaction fully expected that The Bradford Hammacher Group, Inc.'s per-share value would decrease post-transaction, due to the amount of debt The Bradford Hammacher Group, Inc. and ESOP had assumed, but rise as the ESOP note was repaid until the debt's effects would disappear.

33.     After the September 30, 2013 Transaction, the stock value increased steadily. The December 31, 2013 per-share valuation was $72.35 per share. The December 31, 2014 valuation was $85.00 per share.

34.     The December 31, 2015 valuation was $117.50 per share.

35.     Reliance engaged in a prudent process to ensure that the ESOP paid no more than adequate consideration for The Bradford Hammacher Group, Inc. stock and that other terms of the September 30, 2013 Transaction were reasonable from the standpoint of the ESOP.

36.     Reliance's due diligence, evaluation, and analysis was independent from that of the Bradford/Hammacher Entities and selling shareholders.

37.     The ESOP's purchase of stock from The Bradford Hammacher Group, Inc. is subject to an exemption in ERISA § 408(e) from the prohibited-transactions provisions in ERISA § 406.

38.     The loan to the ESOP is subject to an exemption in ERISA 408(b)(3) from the prohibited-transactions provisions in ERISA § 406.

39.     Reliance's receipt of payment as consideration for its services as Trustee of the ESOP is subject to an exemption in ERISA § 408(b)(2) from the prohibited transactions provisions in ERISA § 406.

40.     Defendant also reserves its right to argue the applicability of other exemptions in response to claims or positions Plaintiff takes in this litigation.

**SECOND AFFIRMATIVE DEFENSE:   WAIVER/ESTOPPEL.**

41.     Plaintiff's claims are barred in whole or in part based on a Letter Agreement and General Release and Additional Terms in which she agreed to release and waive her claims.

**THIRD AFFIRMATIVE DEFENSE:  STANDING.**

42.     Plaintiff's claims are barred in whole or in part because neither Plaintiff, any other participant or beneficiary, nor the Plan suffered damages and Plaintiff lacks standing to bring claims.

86787258.14

**WHEREFORE**, Defendant respectfully requests that this Court enter judgment in its favor and against Plaintiff.

Dated: November 10, 2016          Respectfully submitted,

                                    **DRINKER BIDDLE & REATH LLP**

                                    /s/    *Theodore M. Becker*
                                    Theodore M. Becker
                                    Richard J. Pearl
                                    Theodore.becker@dbr.com
                                    Richard.Pearl@dbr.com
                                    191 N. Wacker Drive, Suite 3700
                                    Chicago, IL  60606-1698
                                    Telephone:  (312) 569-1000
                                    Facsimile:  (312) 569-3000

                                    *Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that, on November 10, 2016, I caused a true and correct copy of the foregoing ***Defendant's Answer and Affirmative Defenses*** to be filed electronically using the Court's CM/ECF system and to thereby be served upon on all registered participants identified in the Notice of Electronic Filing in this matter on this date.

*/s/ Theodore M. Becker*
Drinker Biddle & Reath LLP
191 North Wacker Drive, Suite 3700
Chicago, Illinois 60606

*Attorney for Defendant Reliance Trust Company*

- 24 -

86787258.14