## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| **ARTUR A. NISTRA, on behalf of The Bradford Hammacher Group, Inc. Employee Stock Ownership Plan, and on behalf of a class of all other persons similarly situated,** | Case No. 1:16-cv-04773 |
| | Hon. Gary Feinerman |
| **Plaintiff,** | Magistrate Judge Sidney I. Schenkier |
| **v.** | |
| **RELIANCE TRUST COMPANY,** | |
| **Defendant.** | |

## PLAINTIFF'S UNOPPOSED MOTION AND INCORPORATED MEMORANDUM OF LAW FOR PRELIMINARY APPROVAL OF SETTLEMENT AND AMENDING DEFINITION OF CLASS

Plaintiff Artur A. Nistra, Individually and as Class Representative, hereby moves for an order preliminarily approving a class action settlement agreement, with an amended class definition, approving notice to the class and setting a date for a fairness hearing. The proposed Settlement is between Plaintiff and Defendant Reliance Trust Company ("Reliance"), as well as third parties The Bradford Hammacher Group, Inc. ("Bradford Hammacher") and all its predecessors, subsidiaries and affiliates, The Bradford Hammacher Group, Inc. Employee Stock Ownership Plan (the "Plan"), and Richard Tinberg, James Liggett and John MacArthur (collectively "Selling Shareholders/Directors").[1]

---

[1] Unless otherwise defined, all capitalized terms herein shall have the same meaning as set forth in the Parties' Settlement Agreement.

I.    **INTRODUCTION**

Subject to the Court's approval, the Parties have settled this Employee Retirement Income Security Act, 29 U.S.C. § 1000, *et seq.,* ("ERISA") class action for a cash contribution to the Plan of $12,000,000.00. In addition, the Selling Shareholders/Directors will cause $1,363,636.00 to be deposited into the Settlement Fund Account. No portion of the settlement payment is a tax or penalty under ERISA or the Internal Revenue Code of 1986 as amended. Should the Court grant final approval, every eligible member of the class will receive their portion of the Net Settlement Fund according to a Plan of Allocation.

The proposed settlement ("Settlement") satisfies all of the criteria for preliminary approval, and the Settlement provides an excellent result for the class. For these reasons, discussed in more detail below, Plaintiff requests that the Court: (a) grant preliminary approval of the Settlement Agreement, attached to the Declaration of Gregory Y. Porter (the "Porter Declaration") as Exhibit A; (b) amend the class definition; (c) approve the proposed Class Notice, Exhibit 1-A to the Settlement Agreement; (d) appoint KCC, LLC ("KCC") as the Settlement Administrator; (e) approve the plan of allocation; (f) appoint KCC as Escrow Agent; (g) appoint Fiduciary Counselors Inc. as Independent Fiduciary; and (h) set a date for a Fairness Hearing.

II.   **FACTUAL AND PROCEDURAL BACKGROUND**

A.    **Background**

This is a class action brought on behalf of participants and beneficiaries of the Plan alleging that Reliance violated ERISA in connection with the purchase of 600,000 shares of Bradford Hammacher stock by the Plan on September 30, 2013 for $100,000,000 (the "ESOP Transaction").

Plaintiff alleges that Reliance violated ERISA § 406, 29 U.S.C. § 1106, because Reliance engaged in a prohibited transaction under ERISA by, *inter alia*, causing the Plan to borrow money from a party in interest; causing the Plan to acquire Bradford Hammacher shares from Bradford Hammacher; acting for the benefit of Bradford Hammacher by approving a purchase price for Bradford Hammacher stock that exceeded its fair market value; and receiving payment from Bradford Hammacher for serving as trustee on behalf of the Plan.

Reliance denies all of these allegations; denies liability; and has vigorously defended itself in the Lawsuit. Reliance does not admit wrongdoing of any kind regarding the ESOP Transaction or the Lawsuit.

### B.     Discovery

Plaintiff and Reliance have diligently prosecuted this action and have engaged in robust discovery. They propounded and responded to written discovery. Plaintiff's and Reliance's counsel received and reviewed over 31,000 documents produced by Bradford Hammacher, Reliance, and various third parties. Plaintiff's counsel retained and consulted with three experts, who prepared detailed reports and analyses on valuation, due diligence and the direct marketing industry. Reliance's counsel likewise retained and consulted with two experts, who prepared reports on similar topics. All five experts were deposed.

Plaintiff and Reliance also took nine fact depositions. Plaintiff took the depositions of three of Reliance's employees (two of whom also testified as Reliance's 30(b)(6) designees), two of Reliance's financial advisors, two Bradford Hammacher executives (one of whom was also a selling shareholder), Bradford Hammacher's financial advisor, and an investment banker that advised Bradford Hammacher on other sale options available to Bradford Hammacher and the

selling shareholders. All of these depositions were attended by Reliance's counsel, who also examined some of those witnesses. Reliance took the deposition of the named Plaintiff.

### C.     Motion Practice

During the course of this litigation, Plaintiff and Reliance have engaged in extensive motion practice. Reliance filed a Motion to Dismiss Plaintiff's Complaint (Dkt. 19), which was denied (Dkt. 27). Plaintiff filed a Motion for Class Certification. (Dkt. 47). Reliance filed a Motion to Suspend Class Certification Briefing Pending Additional Discovery (Dkt. 56) which was granted (Dkt. 65). Reliance filed a Motion for Summary Judgment (Dkt. 66) and Opposition to Plaintiff's Motion for Class Certification (Dkt. 68). The Court denied Plaintiff's Motion for Class Certification and entered and continued Reliance's Motion for Summary Judgment. (Dkt. 76). Plaintiff filed a Motion for Leave to Amend Complaint (Dkt. 77) which the Court granted, and denied Reliance's Motion for Summary Judgment as moot (Dkt. 83). Plaintiff re-filed a Motion for Class Certification (Dkt. 90) which was granted (Dkt. 142) and then modified (Dkt. 149). Plaintiff sought leave to file a Second Amended Complaint (Dkt. 99) which was granted (Dkt. 112). Reliance filed a Motion to Dismiss Count II of the Second Amended Complaint (Dkt. 113) which was denied as moot (Dkt. 136). Plaintiff filed a Motion to Compel Discovery (Dkt. 120) which was granted in part, denied in part and denied in part as moot (Dkt. 132). Plaintiff sought leave to Amend Complaint (Dkt. 155) which was denied (Dkt. 172). The Parties also filed motions to exclude the opposing parties' experts (Dkt. 180, 182) which were denied (Dkt. 218).

### D.     The Parties' Settlement Efforts

The Parties (as defined in the Settlement Agreement) attempted to mediate this matter with Robert A. Meyer, Esq. of JAMS. The Parties submitted mediation statements and attended a two-day mediation at the JAMS offices in Chicago on March 7 and 8, 2019. The Parties

4

vigorously engaged in the mediation process, but, despite much deliberation, discussion, and compromise, the attendees were not able to reach a resolution at that time. Consequently, Plaintiff and Defendant commenced trial on April 23, 2019, and Plaintiff put on most of his affirmative case before the pre-scheduled break in the trial schedule.

Settlement discussions continued in the weeks following the mediation, during the trial and into the weeks between the scheduled trial dates. The Parties were ultimately able to reach the proposed settlement terms currently before the Court. (Porter Dec. ¶ 12.)

## III.    SUMMARY OF THE PROPOSED SETTLEMENT TERMS

The material terms of the Settlement Agreement include the following:

**A.  Settlement Class.** The Court has already certified the class as follows:

All persons other than the September 30, 2013 selling shareholders (including their beneficiaries, heirs, and assigns), who were participants in The Bradford Hammacher Group, Inc. Employee Stock Ownership Plan.

(Dkt. 149). The proposed settlement class is defined as:

All persons other than the September 30, 2013 selling shareholders (including their beneficiaries, heirs, and assigns), who are current or former participants in The Bradford Hammacher Group, Inc. Employee Stock Ownership Plan, whether or not they were vested.

("Settlement Class"). The proposed Settlement Class definition clarifies that anyone who participated in the Plan during the Class Period, except for the excluded persons, is a member of the class.

**B.  Benefits to the Class.**

_Monetary relief._ Reliance will cause to be paid $12,000,000.00 ("Class Settlement Amount") into the Settlement Fund Account. (Settlement Agreement, ¶ 7.1.2). The Selling Shareholders/Directors will cause to be paid an additional $1,363,636.00 ("Selling Shareholders/Directors Amount") into the Settlement Fund Account. (Settlement Agreement, ¶

7.1.3). These two amounts constitute the $13,363,636.00 "Gross Settlement Fund." The Gross

Settlement Fund, less all (i) taxes (or reserves to pay taxes), (ii) settlement administration fees,

(iii) Court-approved attorneys' fees and expenses, (iv) Service Award to the Class

Representative, if any, (v) Plan recordkeeper fees and costs, and (vi) Independent Fiduciary fees

and costs shall constitute the "Net Settlement Fund." The Net Settlement Fund will be distributed

to members of the Settlement Class pursuant to the Plan of Allocation.

     **C.**     **Notice and Administration**. The Settlement Administrator, KCC, shall be

responsible for disseminating Class Notice, establishing a website for case documents,

establishing an interactive voice response system to respond to enquiries, and processing

objections. The Settlement Administrator shall also implement the Plan of Allocation, subject to

oversight of Class Counsel, and provide to Plan's Recordkeeper and Bradford Hammacher, the

Plan Administrator, the amounts to be allocated to members of the Settlement Class who have

active accounts in the Plan. The Settlement Administrator shall also distribute pro rata shares of

the Net Settlement Fund to Plan participants without an active account in the Plan.

     The Escrow Agent and KCC shall be responsible for establishing and maintaining a

qualified settlement trust to hold the Gross Settlement Fund. Pending the remittance of the Net

Settlement Fund to the ESOP for allocation to the accounts of the Settlement Class Members,

KCC shall invest the assets of the qualified settlement trust pursuant to the agreement between

KCC and Plaintiff's Counsel. KCC's summary of experience and proposal for Settlement

Administration and Escrow Agent services is Exhibit B to the Porter Declaration. KCC's

proposal encompasses fees and services for settlement administration and escrow.

### D.     Case Contribution Award to Plaintiff and Attorneys' Fees and Costs

Subject to Court approval, Class Counsel's fees, costs and expenses, and a Case Contribution Award payment to Plaintiff shall be paid from the Class Settlement Amount prior to distribution of the Net Settlement Fund as described in the Settlement Agreement to the Settlement Class participants. (Settlement Agreement, ¶¶ 10.2, 10.3.) Plaintiff shall petition the Court for an award not to exceed $25,000 in recognition of his service as class representative. (Settlement Agreement, ¶ 10.3.) Plaintiff shall also be entitled to an allocation under this settlement as a Settlement Class Member. Class Counsel will petition the Court for an award of attorneys' fees and reimbursement of litigation expenses not to exceed $4.145 million ($3.5 million for attorneys' fees and $645,000 for expenses[2]) (Settlement Agreement, ¶ 10.2), should Class Counsel seek $3.5 million in fees, the requested attorneys' fees would be approximately 29% of the Class Settlement Amount.[3]

### E.     Release of Claims

Upon satisfaction of the conditions required by the Settlement Agreement, Plaintiff, all Settlement Class Members, and the Plan will release Reliance, Bradford Hammacher, and the Selling Shareholders/Directors from any claims they have related to this Lawsuit, and will be prohibited from bringing or pursuing against Reliance, the Selling Shareholders/Directors, and Bradford Hammacher any other lawsuits or other actions based on such claims. Additionally, Reliance on the one hand, and Bradford Hammacher and the Selling Shareholders/Directors on the other hand, will mutually release any claims they have related to this Lawsuit, and will be

---

[2] As of preliminary approval, Class Counsel's expenses are $638,963.29. Class Counsel will incur additional expenses for appearance at the preliminary approval and fairness hearings.

[3] The maximum fee to be sought by Class Counsel has been calculated under the standard set by *In re Synthroid Mktg. Litig.*, 325 F.3d 974, 978-80 (7th Cir. 1992) ("*Synthroid II*"), which this Court has applied in several prior orders.

prohibited from bringing or pursuing any lawsuits or actions based on such claims against each other. The Releases and the Covenants are set forth in full in the Settlement Agreement.

### F.    Notice and Proposed Schedule of Events

The Settlement Agreement provides that Parties shall provide the Settlement Administrator with the names and last known addresses of Settlement Class Members for the purpose of providing notice of the proposed settlement. (Settlement Agreement ¶ 2.2.2).

The proposed Class Notice, Exhibit 1-A to the Settlement Agreement, provides all the information necessary to inform the Settlement Class Members about the nature of the Lawsuit, the terms of the Settlement, including both monetary and prospective relief, and the procedures for entering an appearance to be heard or to object to the Settlement. In addition, Class Counsel will make available to Settlement Class Members key court documents, including the Third Amended Complaint, the Settlement Agreement, this Motion and preliminary approval papers, Plaintiff's Motion for Award of Attorneys' Fees, and Plaintiff's Motion for Final Approval via a website established and maintained by the Settlement Administrator. The Class Notice will be mailed by U.S. mail, first class. Class Counsel anticipate that Settlement Class Members' mailing information supplied by the Plan's Recordkeeper will be largely accurate. Many Settlement Class Members were fairly recently employed by Bradford Hammacher and are participants in the Plan. Accordingly, it is anticipated that there are valid mailing addresses and/or e-mail addresses for many of the Settlement Class Members. For undelivered or returned mail to Settlement Class Members, the Settlement Administrator will engage in various, standardized processes to identify and locate Settlement Class Members.

Plaintiff and Reliance agree to the following schedule of events subject to the Court's approval:

| Event | Timing |
|---|---|
| Preliminary Approval Hearing | January 9, 2020 |
| Parties to provide Settlement Administrator with class list and Class contact information | January 21, 2020 |
| CAFA Notice | December 30, 2019 |
| Mail Settlement Notice | February 11, 2020 |
| Plaintiff's motions for final approval of the Settlement, and for an award of attorneys' fees and expenses, and for a Service Award for Named Plaintiff | Thirty (30) days before Fairness Hearing |
| Objections to the Settlement and notice of intention to appear at Fairness Hearing | Fifteen (15) days before Fairness Hearing |
| Response to Objections and Settlement Administrator's Notice Declaration | Seven (7) days before Fairness Hearing |
| Fairness Hearing | No sooner than May 11, 2020 |

## IV.  ARGUMENT

### A.  The Court should grant preliminary approval of the Settlement because it is fair, reasonable and adequate.

#### 1.  The standards for preliminary approval.

Federal Rule of Civil Procedure 23(e) provides that a class action cannot be settled or compromised without approval by the court. Judicial approval is required regardless of whether the action is certified for trial and later settled or is certified for purposes of settlement. Manual for Complex Litigation (Fourth) § 21.61 (2004). Ultimately, to approve the proposed settlement the Court must determine that it is fair, reasonable and adequate. *Kaufman v. Am. Express Travel Related Servs. Co., Inc.,* 877 F.3d 276, 283 (7th Cir. 2017).

Before a court approves a proposed settlement, notice must be provided to the class. Fed. R. Civ. P. 23(e)(1). The parties must provide the court with information sufficient to enable the court to determine whether to give such notice of the proposal to the class. *Id*. The court

examines the information provided by the parties against a number of factors to determine whether notice should be given to the class. *Id*.

The 2018 Amendments to Rule 23, effective December 1, 2018, provide guidance to federal courts considering whether to grant preliminary approval of a class action settlement. Fed. R. Civ. P. 23(e), Committee Notes. "[I]n weighing a grant of preliminary approval, district courts must determine whether 'giving notice is justified by the parties' showing that the court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal.'" *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, No. 05MD1720MKBJO, 2019 WL 359981, at *12 (E.D.N.Y. Jan. 28, 2019) (citing Fed. R. Civ. P. 23(e)(1)(B)(i–ii)). Therefore, although the factors cited in Rule 23(e)(2) "apply to final approval, the Court looks to them to determine whether it will likely grant final approval based on the information currently before the Court"—those factors are as follows:

(A) the class representatives and counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

(i) the costs, risks, and delay of trial and appeal;

(ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii) the terms of any proposed award of attorney's fees, including timing of payment; and

(iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

*Id.* (citing Fed. R. Civ. P. 23(e)); *accord Hays v. Eaton Grp. Attorneys*, LLC, No. CV 17-88-JWD-RLB, 2019 WL 427331, at *4 (M.D. La. Feb. 4, 2019). Plaintiff will address each these

10

factors, many of which overlap, below, to the extent they are applicable. There is no separate agreement required to be identified under (C)(iii).

### 2. The Class Representative and Class Counsel have adequately represented the Class.

Rule 23(e)(2)(A) looks to whether the representative parties have adequately represented the class. *See Snyder v. Ocwen Loan Servicing, LLC*, No. 14 C 8461, 2019 WL 2103379, at *4 (N.D. Ill. May 14, 2019)*; Amchem Products v. Windsor*, 521 U.S. 591, 117 S.Ct. 2231, 2251, 138 L.Ed. 2d 689 (1997) (courts look at whether the representatives' interest are in any way antagonistic to or in conflict with those of the class members). Where, as here, the injuries suffered by the named Plaintiff are the same as those that the class is alleged to have suffered, the adequacy requirement is usually satisfied. *Duhaime v. John Hancock Mutual Life Ins. Co.,* 177 F.R.D. 54, 63 (D. Mass. 1997).

Plaintiff has proven to be an exemplary class representative and in fact this Court has already found him to be adequate. (Dkt. 143). He has spent significant time on behalf of the putative class in this hard-fought litigation, spanning over two years. His efforts include responding to counsel requests, reviewing documents, offering deposition testimony and affidavits, and travelling to and testifying at trial. If he had not been willing to act as a class representative and prosecute the case on behalf of others similarly situated, there would be no settlement benefits at all for other Settlement Class Members. He has no interests that are antagonistic to or in conflict with the Settlement Class.

In addition, Class Counsel are well-qualified and vigorously prosecuted this class action, including engaging in substantial discovery efforts, filing or responding to the numerous motions listed above, successfully moving for class certification, attending the two-day mediation session, and presenting Plaintiff's case-in-chief at trial. Class Counsel are active class action

11

practitioners whose long experience in ERISA law and class action litigation is demonstrated by the declarations attached to Plaintiff's Motion for Class Certification. Porter Dec. ¶ 8. The "adequacy of representation" factor of Rule 23(e)(2)(A) is met. Further, the Court has already ruled that Class Counsel are qualified and experienced in certifying this lawsuit as a class action. (Dkt. 143).

### 3. The proposed settlement was negotiated at arm's length.

The Settlement here was achieved through extensive, arm's length settlement negotiations under the guidance of the mediator, Robert A. Meyer, Esq., and continued discussion between the Parties. Mr. Meyer has extensive experience mediating complex class actions and commercial disputes.[4] In addition to the in-person mediation sessions, Mr. Meyer communicated with the Parties by phone and e-mail on numerous occasions before and during trial to assist in achieving a settlement. With his assistance, the Parties ultimately reached agreement to key settlement terms on May 17, 2019.

Prior to mediating with Mr. Meyer, the Plaintiff and Reliance had already engaged in robust discovery. "The stage of the proceedings at which settlement is reached is important because it indicates how fully the district court and counsel are able to evaluate the merits of plaintiffs' claims." *Armstrong v. Bd. Of Dirs. Of Milwaukee*, 616 F.2d 305, 325 (7th Cir. 1980) *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998). In this case, the parties have completed both fact (including nine fact depositions) and expert discovery and one week of trial and have therefore had a complete opportunity to test their claims and defenses and understand the strengths and weaknesses of their positions.

---

[4] Mr. Meyer's experience and qualifications are detailed at http://www.jamsadr.com/meyer/. (Last viewed June 7, 2019).

Having a comprehensive grasp of the facts and the legal issues, the Parties prepared detailed, substantive mediation briefs. The Parties' respective positions and arguments were also subjected to vigorous questioning and analysis by the mediator, Mr. Meyer.

In sum, the robust discovery process, the pre-mediation discussions, the mediation briefing, the sharing of information during mediation, and the involvement of Mr. Meyer support a finding that the settlement was reached through robust investigation and was fairly and honestly negotiated.

### 4. The relief provided for the class is adequate taking into account the costs, risks, and delay of trial and appeal.

Litigation would be lengthy and expensive if this action were to proceed. The second week of trial was set for May 28, 2019, which would have required several attorneys from both sides spending most of their time in the weeks leading up to May 28th preparing for trial. And, regardless of the outcome, there likely would have been appeals that followed, further delaying resolution and causing more expense. This factor weighs strongly in favor of approval.

And there were certainly risks of proceeding through trial and the appeals process as Plaintiff and Reliance had vastly different views about Reliance's liability and the likely outcome of the litigation. Plaintiff's core allegations – that Reliance engaged in a prohibited transaction under ERISA by, *inter alia*, causing the Plan to borrow money from a party in interest, causing the Plan to acquire Bradford Hammacher shares from Bradford Hammacher, acting for the benefit of Bradford Hammacher by approving a purchase price for Bradford Hammacher stock that exceeded its fair market value, and receiving payment from Bradford Hammacher for serving as trustee on behalf of the Plan – rested on facts that were strongly contested by Reliance. These included the accuracy of Bradford Hammacher's projections, whether the valuation methods employed by Reliance and its advisors were proper, and whether

there were negative facts that were ignored by or not sufficiently investigated by Reliance and its advisors during the due diligence and negotiation process.

Reliance asserted affirmative defenses and vigorously denied all of these allegations and defended its actions with respect to the purchase. Reliance has pointed to evidence that supports the conclusion that Reliance has no liability and retained experts who support such conclusions. If the Lawsuit were to proceed through trial, Plaintiff would have to overcome these defenses and arguments.

Plaintiff and Reliance also disagreed on the Parties' respective burdens of proof in connection with Plaintiff's claim under Section 406(a)(1)(E). The parties filed supplemental briefing on the issue on the eve of trial but the issue has not been resolved by the Court.

Plaintiff and Reliance also strongly disagree on the proper measure of damages. Reliance contends that the Plan and its participants were not harmed. Plaintiff, on the other hand, argued that the Plan incurred significant financial damage through its overpayment for Bradford Hammacher shares. The Parties have exchanged various letters and position papers supporting their differing views of what a proper measure of damages should be and presented their theories extensively in the lead up to and at trial. While Plaintiff presented evidence in its affirmative case that the Plan paid $100 million for stock that had no equity value; Reliance took the position that the Plan acquired stock via a $100 million non-recourse loan, the face value of which was far less than the stock's fair market value. That core dispute had not been resolved at the time the parties reached their settlement and the uncertainty put both parties at great risk.

These fact intensive inquiries would have led to a battle of experts and conflicting evidence and testimony, which would have placed the ultimate outcome of the litigation in doubt, because no party could reasonably be certain that its expert or evidence, or positions on

14

respective burdens of proof, would carry the day and be considered dispositive. Likewise, there was uncertainty about the measure of damages that the Court would apply in this case.

In light of the inherent uncertainty, the total settlement amount of $13,363,636.00 is a good result for the Settlement Class. As courts in this Circuit have noted, "[a] settlement need not provide the class with the maximum possible damages to be reasonable." *Douglas v. W. Union Co.*, No. 14 C 1741, 2018 WL 4181484, at *6 (N.D. Ill. Aug. 31, 2018). A district court should not "reject[ ]" a settlement "solely because it does not provide a complete victory to the plaintiffs," for "the essence of settlement is compromise." *Isby v. Bayh*, 75 F.3d 1191, 1200 (7th Cir. 1996) (internal quotation marks omitted). A settlement is properly "a bilateral exchange . . . where both sides gain as well as lose something." *In re Gen. Motors Corp. Engine Interchange Litig.*, 594 F.2d 1106, 1135 (7th Cir. 1979) (internal quotation marks omitted). Indeed, even recoveries representing a very small percentage of the defendant's maximum exposure may be found to be fair, adequate and reasonable. *See, e.g.*, *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 542 (S.D. Fla.1988) ("A settlement can be satisfying even if it amounts to a hundredth or even a thousandth of a single percent of the potential recovery."); *Newbridge Networks Sec. Litig.*, No. 94-1678, 1998 WL 765724, at *2 (D.D.C. Oct. 23, 1998) ("an agreement that secures roughly six to twelve percent of a potential recovery . . . seems to be within the targeted range of reasonableness"); *In re Rite Aid Corp. Sec. Litig.*, 146 F. Supp. 2d 706, 715 (E.D. Pa. 2001) (noting that since 1995, class action settlements have typically "recovered between 5.5% and 6.2% of the class members' estimated losses").

Where the Settlement Class faces numerous risks of losing, including at trial or on appeal, not to mention the years of delay should this Lawsuit proceed through an appeal, the

Settlement Agreement represents the best realistic recovery for all members of the Settlement Class, and it is well within the range of possible approval.

Although it is not an enumerated factor in amended Rule 23, courts have traditionally considered competent counsel's evaluation of risk and adequacy of relief. Courts are "entitled to rely heavily on the opinion of competent counsel" *Gautreaux v. Pierce,* 690 F.2d 616, 634 (7th Cir. 1982) (citation omitted), and counsel for Reliance and Plaintiff are competent and have experience in ERISA litigation, including ESOP litigation. Moreover, as discussed below with respect to the extensive litigation and negotiation process that occurred before Settlement, there is no indication that it is the result of collusion.

For the reasons stated above with respect to the strength of Plaintiff's case compared to the amount of the settlement, serious questions of law and fact exist, putting both sides at risk of an adverse result.

Compared to the costs, risks and delay of trial and appeal, the immediate and certain contribution of $13,363,636.00 to the Plan outweighs the uncertain possibility of a greater amount in the future, particularly given the amount of time it would take—including trial, post-trial and post-judgment briefing, and appeals—for any judgment to be reduced to actual payment to Plan participants. For these reasons, the immediate contribution of $13,363,636.00 outweighs the mere possibility of future relief of an uncertain amount.

### 5.     Additional Rule 23(e)(2) Factors

In addition to the above, Rule 23(e)(2)(C) requires the Court to consider: whether the relief provided for the class is adequate, taking into account:

> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

> (iii) the terms of any proposed award of attorney's fees, including timing of payment.

16

And Rule 23(e)(2)(D) requires that the Court consider whether class members are treated equitably relative to each other. All of these factors also weigh heavily in favor of approval.

The Settlement Agreement offers cash compensation in the aggregate amount of $13,363,636.00, with the net amount (after payment of such attorneys' fees and costs, including notice and related costs, and Plaintiff's Case Contribution Awards as may be allowed by the Court)[5] guaranteed to be paid to the Class Members. There will be no claims process and no reversion of any part of the Settlement Funds to Reliance. Payments will be made automatically, making the distribution process 100% effective.

The Plan of Allocation, Exhibit 2 to the Settlement Agreement, will allocate the Net Settlement Fund to each Settlement Class Member in proportion to the vested company shares that he or she held in the Plan compared to the total vested company shares held in the Plan by all Settlement Class Members. Such a plan treats all Settlement Class Members equally and equitably.

With regard to attorneys' fees, Class Counsel will apply for Court approval of an award of attorneys' fees in a separate motion of no more than $3,500,000, which amount has been calculated using the standard set forth in *Synthroid II*. Class Counsel will also seek reimbursement for litigation expenses, currently are estimated to be $638,963.29, not to exceed $645,000. The requested fee is within the range of approved fee awards in this jurisdiction. The Settlement Class will be notified of the amount of the fees and litigation expenses to be requested in the Notice. The attorney's fees and expenses shall be paid from the Class Settlement Amount of the Gross Settlement Fund.

Each of these additional factors thus favors approval.

---

[5] As noted above, attorneys' fees, costs and expenses and any Case Contribution Award will be deducted solely from the $12 million that Reliance is contributing to the Settlement.

All of the factors discussed in caselaw and in Rule 23(e)(2) thus, support preliminary approval of the proposed Settlement. Accordingly, Plaintiff and Class Counsel request that the Court grant preliminary approval and permit notice to the Class.

**B.** **The Court Should Approve the Notice Plan and Schedule A Final Approval Hearing.**

Pursuant to Federal Rule of Civil Procedure 23(e)(1) and (e)(5), the Settlement Agreement provides for notice to the Settlement Class, and an opportunity for Settlement Class Members to object to approval of the Settlement and to Class Counsel's fee petition. (*See* Exhibit 1-A to the Settlement Agreement.) The Parties have agreed, subject to Court approval, to a notice plan, which calls for individual mailed notice or emailed notice that will provide Settlement Class Members with sufficient information to make an informed decision about whether to object to the proposed Settlement. (*See* Exhibit 1-A to Settlement Agreement.) The notice informs Settlement Class Members of the nature of the action, the litigation background and the terms of the agreement, including the definition of the Settlement Class, the relief provided by the Settlement Agreement, the intent of Class Counsel to seek fees and costs, the Case Contribution Award to Plaintiff to be sought, the scope of the releases and binding nature of the Settlement on Settlement Class Members, and the uncertain nature of litigation. In addition, the Notice informs Settlement Class Members that additional documents, including the Settlement Agreement and Plaintiff's Motion for Award of Attorneys' Fees, will be available via the settlement website. The Notice also describes the procedure for objecting to the Settlement and states the date, time and place of the final approval hearing. *Id.* This notice and the manner in which it will be disseminated to Settlement Class Members satisfy Rule 23(e)(1) and constitutional due process concerns.

The Parties request that the Court approve KCC LLC as Settlement Administrator, Escrow Agent, respectively, (Settlement Administrator and Escrow Agent). As detailed in Exhibit B to the Porter Declaration, KCC has extensive experience in the administration of settlements of this type. Finally, the Parties request that the Court schedule a fairness hearing on Plaintiff's motion of an award of reasonable attorneys' fees and Case Contribution Award to Plaintiff, as set forth in the proposed Preliminary Approval Order. This will establish a reasonable and efficient process for disseminating notice, providing the opportunity for Settlement Class Members to object to approval of the Settlement, and considering final approval of the Settlement.

## VI. CONCLUSION

As set forth above, the proposed settlement meets the standard for preliminary approval. Accordingly, Plaintiff respectfully requests that the Court issue an Order: (1) granting preliminary approval of the Settlement; (2) amending the definition of the class; (3) enjoining the Settlement Class Members from pursuing claims that arise out of, or relate in any way to, the claims at issue in this action pending final approval of the settlement; (4) directing notice to Settlement Class Members and approving the plan and form of notice; (5) appointing KCC, LLC as Settlement Administrator; (6) appointing KCC, LLC as Escrow Agent; (7) appointing Fiduciary Counselors Inc. as Independent Fiduciary; (8) scheduling a Fairness Hearing; and (9) scheduling a hearing on Plaintiff's Counsel's motion for fees and costs and the payment of a Case Contribution Award to Plaintiff.

Dated: December 19, 2019     Respectfully Submitted,

             */s/ Patrick O. Muench*
             Patrick O. Muench (IL #6290298)
             BAILEY & GLASSER LLP
             3930 N. Lowell Ave.
             Chicago, IL 60641
             pmuench@baileyglasser.com
             Gregory Y. Porter (*pro hac vice*)
             Ryan T. Jenny
             BAILEY & GLASSER LLP
             1055 Thomas Jefferson St. NW Ste. 540
             Washington, DC 20007
             (202) 463-2101
             gporter@baileyglasser.com
             rjenny@baileyglasser.com

             Robert A. Izard (*pro hac vice*)
             Douglas P. Needham (*pro hac vice*)
             **IZARD, KINDALL & RAABE, LLP**
             29 South Main Street, Suite 305
             West Hartford, CT 06107
             Telephone: (860) 493-6292
             Facsimile: (860) 493-6290
             rizard@ikrlaw.com
             dneedham@ikrlaw.com
             *Attorneys for Plaintiff*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that, on December 19, 2019, I caused a true and correct copy of the

foregoing to be filed electronically using the Court's CM/ECF system and to be thereby served

upon all registered participants identified in the Notice of Electronic Filing in this matter on this

date.

*/s/ Patrick O. Muench*
Patrick O. Muench