# EXHIBIT A

EXECUTION VERSION

## IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS

### EASTERN DIVISION

| | | |
|---|---|---|
| ARTUR A. NISTRA, | ) | |
| | ) | |
| Plaintiff, | ) | No. 16-cv-4773 |
| | ) | |
| v. | ) | Honorable Gary Feinerman |
| | ) | |
| RELIANCE TRUST COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

## CLASS ACTION SETTLEMENT AGREEMENT

This CLASS ACTION SETTLEMENT AGREEMENT ("Settlement Agreement") is made and entered into pursuant to Rule 23 of the Federal Rules of Civil Procedure. This Settlement Agreement is entered into by and between the Named Plaintiff in this Action, for himself and on behalf of the Settlement Class and the Plan, on the one hand, and Defendant, on the other. Capitalized terms used and not otherwise defined herein shall have the meanings set forth in Article I below.

### RECITALS

WHEREAS, on April 29, 2016, the Initial Named Plaintiff, on behalf of a purported class of participants and beneficiaries in the Plan, filed a complaint alleging that Defendant violated ERISA during the Class Period;

WHEREAS, on May 31, 2017, the Named Plaintiff filed a First Amended Complaint in this Action, alleging that Defendant violated ERISA during the Class Period, and replacing Initial Named Plaintiff as the named plaintiff on behalf of a purported class of participants and beneficiaries in the Plan;

WHEREAS, on September 19, 2017, the Named Plaintiff, on behalf of a purported class of participants and beneficiaries in the Plan, filed a Second Amended Complaint in this Action, adding an additional claim that Defendant violated ERISA during the Class Period;

WHEREAS, on November 15, 2017, the Named Plaintiff voluntarily dismissed the ERISA claim he added in the Second Amended Complaint;

WHEREAS, on November 28, 2017, the Named Plaintiff filed a Third Amended Complaint in this Action, removing the claim he added in the Second Amended Complaint and

1

EXECUTION VERSION

bringing the same allegations he brought in the First Amended Complaint that Defendant violated ERISA during the Class Period.

WHEREAS, Defendant filed an answer to the Third Amended Complaint on December 6, 2017 denying any wrongdoing or liability and asserting certain affirmative defenses;

WHEREAS, Plaintiff's Counsel have successfully opposed Defendant's motion to dismiss; have conducted extensive discovery regarding the facts and claims in this Action, including culling and reviewing relevant documents from voluminous produced documents, preparing for and taking or defending depositions of fact witnesses, and engaging in extensive non-party document discovery; have worked with expert consultants, coordinated the preparation of expert reports, analyzed Defendant's expert reports, and have prepared for and defended expert depositions; have prepared pre-trial submissions; have prepared for trial and tried the Action for four days before a settlement in principle was agreed to and trial was suspended.

WHEREAS, Plaintiff's Counsel and counsel for Defendant then conducted arm's-length negotiations concerning a possible compromise and settlement of the Action, including an in-person two-day mediation with Mediator Robert Meyer and follow-up communications with the mediator;

WHEREAS, as a result of their factual investigation and legal research concerning their claims, Plaintiff's Counsel have concluded that the terms of this Settlement are fair, reasonable, and adequate to Named Plaintiff and the Settlement Class, and in their best interests, and have agreed to settle the Action on the terms set forth herein after considering: (i) the benefits that Named Plaintiff and members of the Settlement Class will receive from the Settlement; (ii) the risks, difficulties, and delays involved with complex litigation such as this, including prosecution through trial and appeals; (iii) the specific risks inherent in complex actions under ERISA, including problems of proof and the variety of defenses potentially available to Defendant; and (iv) the desirability of permitting the Settlement to be consummated as provided herein;

WHEREAS, Defendant, notwithstanding its denial of each and every one of the material allegations in the Complaint; its position that it acted at all times reasonably and prudently with respect to the Plan, the participants and beneficiaries of the Plan, and the Settlement Class; and its position that it is not liable for the claims asserted and that it would assert certain other defenses if this Settlement is not consummated, has decided to enter into this Settlement Agreement to avoid the further expense, inconvenience, and burden of this protracted litigation, the distraction and diversion of its time and resources, and the risks and expenses inherent in any complex litigation;

WHEREAS, the Parties desire promptly and fully to resolve and settle with finality all of the Released Claims against Defendant asserted by Named Plaintiff for themselves and on behalf of the Settlement Class and the Plan, on the terms set forth herein and subject to the approval of the Court;

NOW, THEREFORE, it is agreed by the Parties, without any admission or concession of liability or the validity of any allegation in the Complaint whatsoever, in consideration of the

2

**EXECUTION VERSION**

promises, covenants, and agreements herein described, and for other good and valuable consideration, acknowledged by each of them to be satisfactory and adequate, that the Action and the Released Claims be settled, compromised, and dismissed on the merits and with prejudice as to Defendant, on the following terms and conditions, all as subject to the approval of the Court:

## I.  DEFINITIONS

As used in this Settlement Agreement, capitalized terms and phrases not otherwise defined have the meanings provided below:

1.1.  "Action" shall mean the class action captioned *Artur A. Nistra, on behalf of the Bradford Hammacher Group, Inc. Employee Stock Ownership Plan, and on behalf of a class of all other persons similarly situated v. Reliance Trust Company*, No. 16-cv-4773, pending in the United States District Court for the Northern District of Illinois, Eastern Division.

1.2.  "Agreement Execution Date" shall mean the date on which this Settlement Agreement is fully executed, as provided in Section 11.14 below.

1.3.  "Class Notice" shall mean notice of the Settlement to the Settlement Class in a form and substance substantially similar to Exhibit A to the form of Preliminary Approval Order attached hereto as Exhibit 1, to be provided pursuant to the Preliminary Approval Order in the manner and form approved by the Court and in compliance with Rule 23 of the Federal Rules of Civil Procedure.

1.4.  "Class Period" shall mean the period from January 1, 2013 through December 31, 2018.

1.5.  "Class Settlement Amount" shall have the meaning set forth in Section 7.1.2.

1.6.  "Company" shall mean The Bradford Hammacher Group, Inc. a Delaware corporation, each of its direct or indirect subsidiaries and affiliates, and each of its predecessors and successors-in-interest.

1.7.  "Complaint" shall mean the Third Amended Complaint filed in the Action on November 28, 2017.

1.8.  "Court" shall mean the United States District Court for the Northern District of Illinois, Eastern Division.

1.9.  "Defendant" shall mean Reliance Trust Company, each of its direct or indirect subsidiaries and affiliates, and each of its predecessors and successors-in-interest.

1.10.  "Effective Date of Settlement" shall mean the first date on which the Final Order has become Final.

1.11.  "ERISA" shall mean the Employee Retirement Income Security Act of 1974, as amended, including all regulations promulgated thereunder.

EXECUTION VERSION

1.12.   "Fairness Hearing" shall have the meaning set forth in Section 2.2.5.

1.13.   "Final" shall mean, with respect to any judicial ruling, judgment, or order, that the ruling, judgment, or order remains in effect and that the period for any appeals, petitions, motions for reconsideration, rehearing, or certiorari, or any other proceedings for review ("Review Proceeding") has expired without the initiation of a Review Proceeding, or, if a Review Proceeding has been timely initiated, that there has occurred a full and final disposition of any such Review Proceeding without a reversal or modification, including the exhaustion of proceedings in any remand and/or subsequent appeal after remand. Notwithstanding any other provision hereof, the Final Order shall be deemed Final without regard to whether: (i) the Court has entered an order regarding the Plan of Allocation or the award of attorneys' fees and expenses; (ii) any order referred to in (i) above has become Final; or (iii) any order referred to in (i) is reversed or modified on appeal.

1.14.   "Final Order" shall mean a final judgment and order of dismissal which is to be entered by the Court finally approving the terms of this Settlement Agreement and dismissing the Action with prejudice.

1.15.   "Financial Institution" shall have the meaning set forth in Section 7.1.1.

1.16.   "Gross Settlement Fund" shall have the meaning set forth in Section 7.1.4.

1.17.   "Including" (whether or not capitalized) shall mean including without limitation.

1.18.   "Independent Fiduciary" shall mean Fiduciary Counselors Inc.

1.19.   "Initial Named Plaintiff" shall mean Altavia Matthews.

1.20.   "Legal Notice" shall have the meaning set forth in Section 2.2.2.

1.21.   "Named Plaintiff" shall mean Artur A. Nistra.

1.22.   "Net Settlement Fund" shall have the meaning set forth in Section 8.2.

1.23.   "Parties" shall mean the Plaintiff, Defendant, the Company, and the Selling Shareholders/Directors, collectively. The Company is a party to this Settlement Agreement solely for the purpose of providing and receiving the Releases as set forth in Article III and providing and receiving the mutual covenants as set forth in Article IV. The Selling Shareholders/Directors are parties to this Settlement Agreement solely for the purpose of providing and receiving the Releases as set forth in Article III and providing and receiving the mutual covenants as set forth in Article IV.

1.24.   "Person" shall mean an individual, partnership, corporation, limited liability company, governmental entity, or any other form of legal entity or organization.

1.25.   "Plaintiff" shall mean Named Plaintiff, each member of the Settlement Class, and their respective Successors-in-Interest.

**EXECUTION VERSION**

1.26.   "Plaintiff's Counsel" shall mean Bailey & Glasser LLP and Izard, Kindall & Raabe, LLP.

1.27.   The "Plan" shall mean The Bradford Hammacher Group, Inc. Employee Stock Ownership Plan and any trust created under such Plan.

1.28.   "Plan of Allocation" shall mean the Plan of Allocation approved by the Court as contemplated by Section 2.2.5 and described in Section 8.2.

1.29.   "Preliminary Approval Order" shall mean the order preliminarily approving the Settlement substantially in the form annexed as Exhibit 1 hereto.

1.30.   "Preliminary Approval Motion" shall have the meaning set forth in Section 2.2.1.

1.31.   "Recordkeeper" shall mean Principal Financial Group, the current recordkeeper for the Plan, or its successor if Principal Financial Group is no longer the recordkeeper at the time of entry of the Final Order by the Court.

1.32.   "Released Claims" shall have the meaning set forth in Section 3.1.

1.33.   "Released Parties" shall mean the Defendant, the Company, and the Selling Shareholders/Directors; as well as, in the case of the Defendant and the Company, their respective subsidiaries, affiliates and shareholders, and each and all of the respective past, present, and future officers, directors, employees, attorneys, agents, or insurers of any of them, and their respective successors and assigns; and, in the case of the Selling Shareholders/Directors, their spouses, children, beneficiaries, legal representatives, heirs, executors, administrators, and assigns (including, for avoidance of doubt, any such person that at any time during the Class Period served as a named or functional fiduciary or a trustee of the Plan).

1.34.   "Releasing Parties" shall mean each and all of Named Plaintiff (both in his individual capacity and as class representative), the Plan, and the Settlement Class (including each and every member of the Settlement Class); each and all of the foregoing's respective attorneys, agents, spouses, children, insurers, beneficiaries, legal representatives, heirs, executors, administrators, and assigns.

1.35.   "Releases" shall mean the releases set forth in Sections 3.1, 3.2, 3.4, 3.5, and 3.6.

1.36.   "Representatives" shall mean attorneys, agents, directors, officers, and employees.

1.37.   "Selling Shareholders/Directors" shall mean Richard Tinberg, James Liggett, and John MacArthur, and their attorneys, agents, spouses, children, insurers, beneficiaries, legal representatives, heirs, executors, administrators, and assigns.

1.38.   "Selling Shareholders/Directors Amount" shall have the meaning set forth in Section 7.1.3.

1.39.   "Settlement" shall mean the settlement to be consummated under this Settlement Agreement pursuant to the Final Order.

5

**EXECUTION VERSION**

1.40. "<u>Settlement Administrator</u>" shall mean KCC, LLC.

1.41. "<u>Settlement Agreement</u>" shall mean this Class Action Settlement Agreement.

1.42. "<u>Settlement Class</u>" shall mean all persons other than the September 30, 2013 selling shareholders (including their beneficiaries, heirs, and assigns), who are current or former participants in The Bradford Hammacher Group, Inc. Employee Stock Ownership Plan, whether or not they were vested.

1.43. "<u>Settlement Fund Account</u>" shall have the meaning set forth in Section 7.1.1.

1.44. "<u>Successor-In-Interest</u>" shall mean: a Person's estate, legal representatives, heirs, successors or assigns, including successors or assigns that result from corporate mergers or other structural changes.

1.45. "<u>Trustee</u>" shall mean the Argent Trust Company, the current trustee of The Bradford Hammacher Group, Inc. Employee Stock Ownership Trust, or its successor if Argent Trust Company no longer is the ESOP Trustee at the time of entry of the Final Order by the Court.

1.46. "<u>Unconditional</u>" shall have the meaning set forth in Article II.

## II. CONDITIONS TO THE EFFECTIVENESS OF THE SETTLEMENT

This Settlement shall be Unconditional when each of the following conditions in Sections 2.1 through 2.5 has been satisfied. The Parties will use reasonable, good faith, best efforts to cause each of the conditions to occur within the times indicated.

2.1. <u>Condition #1: Other Agreements/Mutual Release</u>. The following agreements and mutual release shall have been entered into:

    2.1.1. An agreement among Selling Shareholders/Directors, the Company, and Eugene Scalia, the Secretary of Labor, United States Department of Labor (the "<u>Secretary</u>") that is consistent with The Bradford Hammacher Group, Inc. Employee Stock Ownership Plan Memorandum of Understanding – Global Settlement that was entered into on May 17, 2019 (the "<u>MOU</u>").

    2.1.2. A settlement agreement between the Defendant and the Secretary relating to the action *Scalia v. Reliance Trust Company*, No. 1:19-cv-02725, pending in the United States District Court for the Northern District of Illinois, Eastern Division and the dismissal with prejudice of that action.

    2.1.3. The Independent Fiduciary Release as described in Sections 3.2 and 3.3.

2.2. <u>Condition #2: Court Approval</u>. The Settlement shall have been approved by the Court in accordance with the following steps:

DM_US 164622597-1.082961.0020

**EXECUTION VERSION**

2.2.1. <u>Motion for Preliminary Approval of Settlement and of Notices</u>. On December 19, 2019 or such later date as set by the Court, Named Plaintiff will file a motion ("<u>Preliminary Approval Motion</u>") with the Court for entry of the Preliminary Approval Order. Named Plaintiff shall give Defendant at least five (5) days to review the Preliminary Approval Motion before filing. Defendant may, but shall not be required to, submit papers in connection with the Preliminary Approval Motion.

2.2.2. <u>Preliminary Approval Order; Issuance of Class Notice</u>. The Court shall issue the Preliminary Approval Order, substantially in the form annexed as Exhibit 1 hereto. Subject to the requirements of the Preliminary Approval Order, Named Plaintiff shall cause the Class Notice, in the form annexed as Exhibit 2 hereto, to be disseminated to the Plaintiff and shall post the Class Notice on a website for the Settlement Class (Legal Notice). The Parties will seek to set the Fairness Hearing for a date on or after May 11, 2020, which shall be at least ninety (90) days after the mailing of the Class Notice to the Settlement Class and the date of mailing of notice under the Class Action Fairness Act of 2005, PL 109-2 (2005) ("<u>CAFA</u>"). Defendant shall provide, or cause to be provided, the names and last known addresses of the Settlement Class members to the Settlement Administrator to the extent available with reasonable effort in electronic format, or such other format as the Settlement Administrator may reasonably request, at least twenty-one (21) days prior to the deadline for mailing notice. The reasonable costs associated with the Class Notice and the Legal Notice shall be paid from the Gross Settlement Fund.

2.2.3. <u>Other Notices</u>. Defendant shall prepare and provide the notices required by CAFA, as specified by 28 U.S.C. § 1715, within ten (10) days of Named Plaintiff filing the Preliminary Approval Motion with the Court. Defendant shall give Named Plaintiff the opportunity to review the notices at least three (3) days before service.

2.2.4. <u>Motion for Final Approval of Settlement</u>. Named Plaintiff will file a motion seeking final approval of the Settlement (the "<u>Final Approval Motion</u>") with the Court no later than thirty (30) days before the Fairness Hearing date set by the Court in the Preliminary Approval Order. Named Plaintiff shall give Defendant at least five (5) days to review and suggest changes to the Final Approval Motion before filing. Defendant may, but shall not be required to, submit papers in connection with the Final Approval Motion.

2.2.5. <u>The Fairness Hearing</u>. The Court will conduct a hearing at which it will consider whether the Settlement should be approved pursuant to Rule 23 of the Federal Rules of Civil Procedure ("<u>Fairness Hearing</u>"). At or after the Fairness Hearing, the Court will determine: (i) whether to enter the Final Order approving the Settlement and dismissing the Action; (ii) whether the distribution of the Net Settlement Fund as provided in Section 8.2 and as provided in the Plan of Allocation should be approved; and (iii) what attorneys' fees and expenses should be granted to Plaintiff's Counsel as contemplated by Article X of this Settlement

EXECUTION VERSION

Agreement. The Parties agree to support entry of the Final Order as contemplated by clause (i) of this Section 2.2.5. Defendant will not take any position, and is not required to take any position, with respect to the matters described in clauses (ii) or (iii) of this Section 2.2.5, nor will Defendant enter into any agreement that restricts the application or disposition of the Settlement Fund. The Parties covenant and agree that they will take all reasonable steps and reasonably cooperate with one another in obtaining the Final Order as contemplated hereby at the Fairness Hearing.

2.2.6. <u>Entry of Final Order</u>. The Court shall have entered the Final Order.

2.3. <u>Condition #3: Funding of Settlement Amount</u>. The Class Settlement Amount and the Selling Shareholders/Directors Amount shall both have been deposited into the Settlement Fund Account in accordance with Sections 7.1.2 and 7.2.

2.4. <u>Condition #4: Finality of Final Order</u>. The Final Order has become Final.

2.5. <u>Condition #5: Dismissal of Claims</u>. Upon the entry of the Final Order, the Action and all claims asserted therein shall be dismissed with prejudice.

### III.  RELEASES

3.1. <u>Released Claims</u>. Subject to Sections 3.2 and 3.8 below, and effective upon the entry of the Final Order, each and all of the Releasing Parties hereby fully, finally, and forever releases, relinquishes, and discharges, to the fullest extent permitted by law, each and all of the Released Parties from and against, and shall forever be enjoined from prosecution of all of the Released Parties for any and all Released Claims (as defined in this Section 3.1). The Release in this Section 3.1 is in addition to the effect of the Final Order entered in accordance with this Settlement Agreement. For purposes of this Settlement Agreement, "<u>Released Claims</u>" means any and all present, or past claims, demands, debts, damages, losses, offsets, obligations, liabilities, warranties, costs, fees, penalties, expenses, rights of action, suits, and causes of action of every kind and nature whatsoever, whether under federal, state, local, or foreign law, whether based on contract, tort, statute, regulation, ordinance, the common law, or another legal or equitable theory of recovery, whether known or unknown, suspected or unsuspected, existing or claimed to exist, asserted or unasserted, foreseen or unforeseen, actual or contingent, liquidated or unliquidated, in law or in equity, that any of the Releasing Parties has that:

(i)    pertain to investment in Company stock by or for the benefit of the Plan or the Plan's participants or beneficiaries, based on any alleged facts, circumstances, or conduct at any time before, up to, and including the date that the Complaint was filed;

(ii)   arise out of, relate to, or are based on the allegations, facts, matters, claims, causes of action, occurrences, or omissions before, up to, and including the date that the Complaint was filed and that are set forth in the Complaint, including:

8

EXECUTION VERSION

     (a)    breach of duties or obligations (including fiduciary duties and obligations) under ERISA to the Plan, to Named Plaintiff, to the Settlement Class, or to the other participants in and beneficiaries of the Plan in connection with Company stock or otherwise;

     (b)    providing misleading information to Plan participants or beneficiaries;

     (c)    failure to appoint, remove and/or adequately monitor the Plan's fiduciaries or Company leadership;

     (d)    failure to adequately monitor the performance of and prudence of investment by the Plan in Company stock;

     (e)    violation of ERISA duties related to the acquisition, disposition, or retention of Company stock by the Plan;

     (f)    breach of ERISA duties in connection with the failure to avoid or resolve conflicts of interest in connection with the Company or the Plan;

     (g)    failure to bring a derivative action by the Plan on behalf of the Company against any director or officer of the Company;

     (h)    participation in a transaction prohibited by ERISA relating to the Company or the Plan; or

     (i)    knowing of an ERISA breach of fiduciary duty or prohibited transaction relating to the Company or the Plan, and participating in or enabling such ERISA breach of fiduciary duty or prohibited transaction, or knowing of such ERISA breach of fiduciary duty or prohibited transaction and failing to remedy it;

    (iii)    would be barred by principles of *res judicata* had the claims asserted in the Action been fully litigated and resulted in a final judgment or order; or

    (iv)    pertain to any conduct related to the direction to calculate, the calculation of, and/or the method or manner of allocation or distribution of the Settlement Fund to the Plan or any participant in or beneficiary of the Plan pursuant to the Plan of Allocation.

3.2.    Approval by the Independent Fiduciary. The Release in Section 3.1 is subject to a written determination by the Independent Fiduciary that the terms of this Settlement Agreement are fair and reasonable to the Plan and its current and former participants and beneficiaries and meet the requirements of Department of Labor Prohibited Transaction Exemption 2003-39, 68 Fed. Reg. 75632 (Dec. 31, 2003), as amended by 75 Fed. Reg. 33830 (June 15, 2010) ("PTE 2003-39"). If the Independent Fiduciary determines the Settlement Agreement is fair and reasonable and meets the requirements of

EXECUTION VERSION

PTE 2003-39, it shall, on behalf of the Plan, authorize the Settlement Agreement under PTE 2003-39 and fully, finally, and forever release, relinquish, and discharge, to the fullest extent permitted by law, each and all of the Released Parties from and against all Released Claims ("Independent Fiduciary Release").

3.3.    Procedure for Approval and Release by the Independent Fiduciary.  Counsel for Defendant and Plaintiff's Counsel shall respond to reasonable requests by the Independent Fiduciary for information so that the Independent Fiduciary can review and evaluate the Settlement Agreement.  The Independent Fiduciary shall deliver its written determination and the Independent Fiduciary Release to counsel for the Defendant, counsel for the Company, and counsel for the Selling Shareholders/Directors no later than forty (40) calendar days before the Fairness Hearing.  Within five (5) days of receipt of the written determination and Independent Fiduciary Release, Defendant will provide a copy to Plaintiff's Counsel.  The Independent Fiduciary's fees charged and reasonable costs incurred in connection with its determination, up to $20,000, shall be paid from the Class Settlement Amount of the Gross Settlement Fund.

3.4.    Releases of Named Plaintiff and Plaintiff's Counsel.  Subject to Section 3.8 below, Defendant, the Company, and the Selling Shareholders/Directors (on behalf of themselves and each of their respective Released Parties) hereby agree and shall be deemed to have, and by operation of the Final Order shall have, fully, finally, and forever released, relinquished, and discharged, and shall forever be enjoined from prosecution of, Named Plaintiff, including the original named plaintiff Altavia Matthews, and Plaintiff's Counsel from any and all present or past claims and causes of action pled in the Third Amended Complaint filed in the Action.

3.5.    Mutual Releases between Defendant and the Company.  Subject to Section 2.1 and Article IX, and effective upon entry of the Final Order, Defendant on one hand, and the Company on the other, on behalf of themselves and of their respective Released Parties, absolutely and unconditionally mutually release and forever discharge each other and all of their respective Released Parties, from all claims of any nature whatsoever (including claims for any and all losses, damages, unjust enrichment, attorneys' fees, disgorgement of fees, litigation costs, injunction, declaration, contribution, indemnification, or any other type of legal or equitable relief), whether accrued or not, that Defendant and the Company directly, indirectly, derivatively, or in any other capacity ever had, now have, or hereafter may have against each other that in any way relate to the Released Claims, including those which were or could have been asserted in the Action against each other. Notwithstanding any other provision hereof, the Releases set forth in this Section 3.5 herein will remain in effect during the pendency of any Review Proceeding of the Final Order.  Only if any Review Proceeding results in a reversal or vacation of the Final Order will the Releases set forth in this Section 3.5 herein become void and lose their effect, at which time the provisions of Article IX will become effective.

3.6.    Mutual Releases between Defendant and the Selling Shareholders/Directors.  Subject to Section 2.1 and Article IX, and effective upon entry of the Final Order, Defendant on one hand, and the Selling Shareholders/Directors on the other, on behalf of themselves and of their respective Released Parties, absolutely and unconditionally mutually release and

**EXECUTION VERSION**

forever discharge each other and all of their respective Released Parties, from all claims of any nature whatsoever (including claims for any and all losses, damages, unjust enrichment, attorneys' fees, disgorgement of fees, litigation costs, injunction, declaration, contribution, indemnification, or any other type of legal or equitable relief), whether accrued or not, that Defendant and the Selling Shareholders/Directors directly, indirectly, derivatively, or in any other capacity ever had, now have, or hereafter may have against each other that in any way relate to the Released Claims, including those which were or could have been asserted in the Action against each other. Notwithstanding any other provision hereof, the Releases set forth in this Section 3.6 herein will remain in effect during the pendency of any Review Proceeding of the Final Order. Only if any Review Proceeding results in a reversal or vacation of the Final Order will the Releases set forth in Section 3.6 herein become void and lose their effect, at which time the provisions of Article IX will become effective.

3.7. <u>Scope of Releases</u>. The Released Parties and the Releasing Parties intend and agree that the Releases granted in this Article III shall be effective as a bar to any and all Released Claims. The Released Parties and the Releasing Parties hereby expressly waive any and all rights and benefits respectively conferred upon them by the provisions of Section 1542 of the California Civil Code and all similar provisions of the statutory or common law of any other State, Territory, or other jurisdiction. Section 1542 reads in pertinent part:

A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release, and that, if known by him or her would have materially affected his or her settlement with the debtor or released party.

The Released Parties and the Releasing Parties each hereby acknowledge that the foregoing waiver of the provisions of Section 1542 of the California Civil Code and all similar provisions of the statutory or common law of any other State, Territory, or other jurisdiction was separately bargained for and that no Released Party or Releasing Party, would enter into this Settlement Agreement unless it included a broad release of unknown claims. The Released Parties and the Releasing Parties expressly agree that all release provisions in this Settlement Agreement shall be given full force and effect in accordance with each and all of their express terms and provisions. The Released Parties and the Releasing Parties assume for themselves, the risk of his, or its, respective subsequent discovery or understanding of any matter, fact, or law, that, if now known or understood, would in any respect have affected his, her, or its entry into this Settlement Agreement.

3.8. <u>Claims Not Released</u>.

3.8.1. The releases set forth in Sections 3.1, 3.2, 3.4, 3.5, and 3.6 (the "<u>Releases</u>") are not intended to include the release of any rights or duties arising out of this Settlement Agreement, including the express representations, warranties, and covenants in this Settlement Agreement; provided, however, that the Parties and their respective counsel shall have no responsibility or liability whatsoever with

11

EXECUTION VERSION

respect to the method and manner of allocation of the Settlement Fund, and Plaintiff, Plaintiff's Counsel, Defendant, and Defendant's counsel shall have no liability whatsoever with respect to the distribution of the Settlement Fund.

## IV.  COVENANTS

4.1.  Covenants Not to Sue.

4.1.1.  Named Plaintiff covenants and agrees on his own behalf, and on behalf of the Settlement Class and on behalf of the Plan: (i) not to commence or assert against any Released Party any action or claim released herein as a Released Claim, or any claim or action based on or arising from any Released Claim; and (ii) that the foregoing covenants and agreements shall be a complete defense to any such claims or actions against any of the respective Released Parties.

4.1.2.  Defendant covenants and agrees: (i) not to commence or assert against Named Plaintiff, including the original named plaintiff Altavia Matthews, any action or claim released under Section 3.4; (ii) not to commence or assert against the Company (and any of its respective Released Parties) any action or claim released under Section 3.5; (iii) not to commence or assert against any of the Selling Shareholders/Directors (and any of their respective Released Parties) any action or claim released under Section 3.6; and (iv) that the foregoing covenants and agreements shall be a complete defense to any such claims or actions against Named Plaintiff, the Company (and any of its respective Released Parties) or any Selling Shareholder/Director (and any of their respective Released Parties).

4.1.3.  The Company covenants and agrees: (i) not to commence or assert against Named Plaintiff, including the original named plaintiff Altavia Matthews, any action or claim released under Section 3.4; (ii) not to commence or assert against the Defendant (and any of its respective Released Parties) any action or claim released under Section 3.5; and (iii) that the foregoing covenants and agreements shall be a complete defense to any such claims or actions against Named Plaintiff or Defendant (and any of its respective Released Parties).

4.1.4.  Each Selling Shareholder/Director covenants and agrees: (i) not to commence or assert against Named Plaintiff, including the original named plaintiff Altavia Matthews, any action or claim released under Section 3.4; (ii) not to commence or assert against the Defendant (and any of its respective Released Parties) any action or claim released under Section 3.6; and (iii) that the foregoing covenants and agreements shall be a complete defense to any such claims or actions against Named Plaintiff or Defendant (and any of its respective Released Parties).

4.2.  Taxation of Settlement Fund.  Named Plaintiff acknowledges on his own behalf, and on behalf of the Settlement Class and on behalf of the Plan, that the Released Parties have no responsibility for any taxes due on funds once deposited in the Settlement Fund Account or that Plaintiff's Counsel receive from the Gross Settlement Fund, should any be

12

EXECUTION VERSION

awarded pursuant to Article X hereof. Nothing herein shall constitute an admission or representation that any taxes will or will not be due on the Gross Settlement Fund.

## V.    REPRESENTATIONS AND WARRANTIES

5.1.    Named Plaintiff's Representations and Warranties.

5.1.1.    Named Plaintiff represents and warrants that he has not assigned or otherwise transferred any interest in any Released Claims against any Released Party and further covenants that he will not assign or otherwise transfer any interest in any Released Claims.

5.1.2.    Pursuant to Articles III and IV, Named Plaintiff represents and warrants that he shall have no surviving claim or cause of action against any of the Released Parties with respect to the Released Claims except as may relate to enforcement of the terms of this Settlement, if, as, and when approved by the Court.

5.2.    Parties' Representations and Warranties. The Parties, and each of them, represent and warrant:

5.2.1.    That they are voluntarily entering into this Settlement Agreement as a result of arm's-length negotiations among their respective counsel, with the assistance and recommendation of the Mediator, Robert Meyer, that in executing this Settlement Agreement they are relying solely upon their own judgment, belief, and knowledge, and the advice and recommendations of their own independently selected counsel, concerning the nature, extent, and duration of their rights, obligations, and claims hereunder and regarding all matters which relate in any way to the subject matter hereof; and that, except as provided herein, they have not been influenced to any extent whatsoever in executing this Settlement Agreement by any representation, statement, or omission pertaining to any of the foregoing matters by any party or by any Person representing any party to this Settlement Agreement. With respect to the Settlement, each of the Parties assumes the risk of mistake as to facts and/or law.

5.2.2.    That they have carefully read the contents of this Settlement Agreement, and this Settlement Agreement is signed freely by each Person executing this Settlement Agreement on behalf of such Party. The Parties, and each of them, further represent and warrant to each other that he, she, or it has made such investigation of the facts pertaining to the Settlement, this Settlement Agreement, and all of the matters pertaining thereto, as he, she, or it deems necessary or appropriate.

5.3.    Signatories' Representations and Warranties. Each individual executing this Settlement Agreement on behalf of any other Person does hereby personally represent and warrant to the other Parties that he or she has the authority to execute this Settlement Agreement on behalf of, and fully bind, each principal whom such individual represents or purports to represent.

13

EXECUTION VERSION

## VI.    NO ADMISSION OF LIABILITY

The Parties understand and agree that this Settlement Agreement embodies a compromise settlement of disputed claims, and that nothing in this Settlement Agreement, including the furnishing of consideration for this Settlement Agreement, shall be deemed to constitute any finding of fiduciary status under ERISA or wrongdoing by Defendant under ERISA or any other statute, regulation, case law, common law doctrine, or other legal authority, or give rise to any inference of fiduciary status under ERISA or wrongdoing or admission of wrongdoing or liability under ERISA or any other statute, regulation, case law, common law doctrine, or other legal authority in this or any other proceeding. This Settlement Agreement and the payments made hereunder are made in compromise of disputed claims and are not admissions of any liability of any kind, whether legal, equitable, or factual, and are not admissions of any damages or losses. Defendant expressly denies any liability, wrongdoing, damages, or losses with respect to the matters alleged in the Complaint. Neither the fact nor the terms of this Settlement Agreement shall be offered or received in evidence in any action or proceeding for any purpose, except: (i) in an action or proceeding arising under this Settlement Agreement or arising out of or relating to the Preliminary Approval Order or the Final Order; or (ii) in an action or proceeding where one or more of the Releases provided pursuant to this Settlement Agreement may serve as a bar to prosecution of the action or proceeding or as a bar to recovery.

## VII.    THE SETTLEMENT FUND AND DELIVERIES INTO THE SETTLEMENT FUND

7.1.    The Settlement Fund.

    7.1.1.    Plaintiff's Counsel shall establish, at a federally chartered financial institution reasonably acceptable to Defendant (the "Financial Institution"), an account for the safekeeping of the Gross Settlement Fund (the "Settlement Fund Account"), which shall be an interest-bearing account and considered a common fund created as a result of the Action. The Settlement Fund Account shall be governed by this Settlement Agreement. Plaintiff's Counsel shall provide to the Defendant, the Company, and the Selling Shareholders/Directors: (i) written notification of the date of establishment of the Settlement Fund Account; (ii) written notification of the following information regarding the Financial Institution and the Settlement Fund Account: bank name, bank address, ABA number, account number, account name, and IRS Form W-9 and taxpayer identification number; and (iii) any additional information needed for Defendant to deposit the Class Settlement Amount, defined in Section 7.1.2, and for the Selling Shareholders/Directors to deposit the Selling Shareholders/Directors Amount, defined in Section 7.1.3, into the Settlement Fund Account. Plaintiff's Counsel shall direct the Financial Institution to make distributions by wire transfer or check from the Settlement Fund Account only in strict accordance with the Settlement Agreement and Court Orders. No other disbursements may be authorized by Plaintiff's Counsel.

    7.1.2.    Within thirty (30) days of the entry of the Preliminary Approval Order, Defendant shall deposit One Hundred and Fifty Thousand Dollars ($150,000) into the Settlement Fund Account for purposes of payment of Administrative Expenses as

**EXECUTION VERSION**

defined in Paragraph 8.1. However, if Plaintiff's Counsel has not provided the Defendant with the notifications and information required in Section 7.1.1(i)-(iii) within twenty (20) days of the entry of the Preliminary Approval Order, then the deadline for the Defendant to deposit this amount into the Settlement Fund Account shall be extended to ten (10) calendar days after the date on which Plaintiff's Counsel provides the notifications and information required in Section 7.1.1(i)-(iii). Ten (10) calendar days after the Effective Date of Settlement, Defendant shall deposit an additional Eleven Million, Eight Hundred and Fifty Thousand Dollars ($11,850,000.00) into the Settlement Fund Account. The two payments described in this paragraph collectively comprise the "Class Settlement Amount."

7.1.3. In accordance with the agreement described in Section 2.1.1., thirty (30) calendar days after the Effective Date of Settlement, the Selling Shareholders/Directors will cause to be deposited One Million, Three Hundred Sixty-Three Thousand, Six Hundred Thirty-Six Dollars ($1,363,636.00) ("Selling Shareholders/Directors Amount") into the Settlement Fund Account.

7.1.4. The Class Settlement Amount, together with interest earned thereon, and the Selling Shareholders/Directors Amount, together with interest earned thereon, shall constitute the "Gross Settlement Fund." Under no circumstances shall the Defendant be responsible for any payments, costs, or fees whatsoever under the Settlement beyond Defendant's obligation to cause the amount set forth in Section 7.1.2 to be deposited in the Settlement Fund Account as provided in this Article VII.

7.1.5. The Gross Settlement Fund shall be structured and managed by Plaintiff's Counsel to qualify as a Qualified Settlement Fund under Section 468B of the Internal Revenue Code and provide reports to Plaintiff' Counsel for tax purposes. It is intended that the Gross Settlement Fund be structured and administered to preserve, to the maximum degree possible, the tax benefits associated with ERISA-qualified plans. The Parties shall not take a position in any filing or before any tax authority inconsistent with such treatment. All taxes on the income of the Qualified Settlement Fund and tax-related expenses incurred in connection with the taxation of the Qualified Settlement Fund shall be the responsibility of Plaintiff and shall be paid out of the Qualified Settlement Fund. The Class Settlement Amount and the Selling Shareholders/Directors Amount will go into the Settlement Fund Account. Each of Plaintiff's Counsel shall have signature authority over the Settlement Fund Account. Plaintiff's Counsel shall direct the Financial Institution to pay from the Gross Settlement Fund the costs and expenses of the Gross Settlement Fund charged to the Gross Settlement Fund in accordance with Section 8.1. Plaintiff's Counsel may instruct the Financial Institution to reserve any portion of the Gross Settlement Fund for the purpose of satisfying future or contingent expenses or obligations, including expenses of Gross Settlement Fund administration or any disbursement provided under the terms of this Settlement Agreement. Defendant takes no position, directly or indirectly, with respect to such matters. The Parties acknowledge and agree that

15

**EXECUTION VERSION**

the Defendant shall have no authority, control, or liability in connection with the design, management, administration, investment, maintenance, or control of the Gross Settlement Fund, or any distribution therefrom, or for any expenses the Gross Settlement Fund may incur, or for any taxes that may be payable by the Gross Settlement Fund or any distributee therefrom.

7.2.   Sole Monetary Contribution.  The Class Settlement Amount and the Selling Shareholders/Directors Amount shall be the full and sole monetary contribution made by the Released Parties in connection with this Settlement Agreement.  The Class Settlement Amount covers any claims for expenses and attorneys' fees by Named Plaintiff, on his behalf or on behalf of the Settlement Class, as well as any expenses of the Class Notice and Settlement administration.  Except as set forth in Section 8.2 below or as otherwise specified in this Settlement Agreement, the Parties shall bear their own expenses (including attorneys' fees) in connection with effectuating the Settlement and securing all necessary court orders and approvals with respect to the same.

## VIII.   PAYMENTS FROM THE SETTLEMENT FUND

8.1.   Administration Expenses.  Plaintiff's Counsel may direct the Financial Institution in writing, without notice to Defendant or further order of the Court, to disburse from the Gross Settlement Fund (i) the amount required for payment of any taxes owed by the Gross Settlement Fund, and (ii) amounts for the reasonable expenses of administering the Gross Settlement Fund, including (a) reasonable expenses associated with the preparation and filing of all tax reports and tax returns required to be filed by the Gross Settlement Fund; (b) expenses associated with the preparation and issuance of any required Forms 1099 associated with payments from the Gross Settlement Fund; (c) fees charged and expenses incurred by the Financial Institution associated with the administration of the Gross Settlement Fund; (d) reasonable costs incurred by the Settlement Administrator in preparing and mailing notice and any supplemental notice to the Settlement Class; (e) fees paid to and reasonable costs incurred by the Independent Fiduciary, in an amount not to exceed $20,000 to be paid from the Class Settlement Amount of the Gross Settlement Fund; and (f) fees paid to and reasonable costs incurred by the Plan's Recordkeeper.

8.2.   Disbursements from the Settlement Fund.

8.2.1.   Following the Effective Date of Settlement, Plaintiff's Counsel may direct the Financial Institution in writing, without notice to Defendant or further order of the Court, to disburse money from the Gross Settlement Fund as provided in Section 10.2 and 10.3 and pursuant to the Plan of Allocation as provided below in this Section 8.2.

8.2.2.   The Plan of Allocation shall be prepared by Plaintiff's Counsel and submitted to the Court for preliminary and final approval in connection with preliminary and final approval of the Settlement, and shall provide for the allocation of the Gross Settlement Fund net of the disbursements called for in Sections 8.1, 8.2.2, 10.2, and 10.3 ("Net Settlement Fund").  The Settlement Administrator shall determine

16

EXECUTION VERSION

the amounts allocable to each Class Member in accordance with the terms of the Plan and in proportion to the vested company shares that he or she held in the Plan. The Settlement Administrator shall also implement the Plan of Allocation by: (1) making payments to former Plan participants, and (2) providing to the Trustee a spreadsheet reflecting each current participant's distribution from the Net Settlement Fund. On or after the Effective Date of Settlement, Plaintiff's Counsel shall direct the Financial Institution to disburse the Net Settlement Fund to the Plan for allocation in accordance with the Plan of Allocation. The Trustee shall direct the Plan's Recordkeeper to distribute the Net Settlement Fund received by the Plan in accordance with the Plan of Allocation. Defendant shall have no responsibility for structuring the content of the Plan of Allocation, but will have the right to review it for feasibility and cost of implementation before presentation to the Court. Costs of implementing the Plan of Allocation, including the costs of calculating the disbursements of the Net Settlement Fund to the members of the Settlement Class, the costs of distributing such Net Settlement Fund, and all of the Settlement Administrator's, Trustee's, and Recordkeeper's fees shall be paid from the Gross Settlement Fund. Confirmation of the allocation of the Net Settlement Fund to the members of the Settlement Class shall be performed by the Settlement Administrator, whose costs and fees shall be paid from the Gross Settlement Fund. Nothing herein shall constitute approval or disapproval of the Plan of Allocation by Defendant, and Defendant shall take no position for or against the Plan of Allocation. Plaintiff, Plaintiff's Counsel, Defendant, Defendant's counsel, the Company, and the Selling Shareholders/Directors shall have no responsibility or liability for or in connection with the calculations and distributions of the Net Settlement Fund to the members of the Settlement Class. The Plan, the Plan's Trustee and the Plan's Recordkeeper shall have no responsibility or liability for or in connection with the calculations and allocation of the Net Settlement Fund to the members of the Settlement Class. In the event of an error by the Settlement Administrator in the calculations or distributions of the Net Settlement Fund to the members of the Settlement Class, the Settlement Administrator shall correct the error within a reasonable amount of time.

8.2.3. The Company agrees and covenants that the portion of the Net Settlement Fund allocated to the accounts of the Plan of Settlement Class Members shall be deposited in said accounts and maintained for the exclusive benefit of such Settlement Class Members and under no circumstances shall any such amounts be used for any other purpose, including payment of Plan debt to the Company.

## IX.  TERMINATION OF THE SETTLEMENT AGREEMENT

9.1.  <u>Termination</u>. Prior to entry of the Final Order, automatic termination of this Settlement Agreement will occur under the following circumstances:

9.1.1. If the Independent Fiduciary does not make the determinations, grant the authorizations and approvals, and deliver the release as provided in Sections 3.2 and 3.3.

17

EXECUTION VERSION

9.1.2    If the Court declines to approve the Settlement, then this Settlement Agreement shall automatically terminate thirty (30) days after such order becomes Final.

9.1.3    If (i) the Court enters an order modifying the economic terms of this Settlement Agreement or materially modifying (from the form annexed on Exhibit 2 hereto) any term of the Final Order, and (ii) within twenty (20) days after the date of any such ruling or within twenty (20) days after the date of the Court's order following a motion for reconsideration of any such ruling, whichever is later, the Party detrimentally affected by the modification(s) declines to waive its objections to the modifications and the Parties otherwise are not able to reach an agreement in light of the modifications, then this Settlement Agreement shall automatically terminate on the twentieth (20th) day after issuance of the order referenced in this Section 9.1.2.

9.1.4    If any or all of the conditions of Article II of this Settlement Agreement are not satisfied in accordance with their terms and substantially in accordance with the timetable set forth in that Article, then this Settlement Agreement shall be terminable by any Party (unless the Party seeking termination caused the failure) thirty (30) days after the applicable deadline set forth in Article II has passed; provided, however, that the Party or Parties that caused the conditions of Article II to not be satisfied shall first be given reasonable notice in writing and an opportunity to cure the deficiency. Notwithstanding anything in this Section 9.1, the Settlement Agreement is not subject to termination solely as a result of a decision or order of the Court concerning an award of attorneys' fees or expenses.

9.2.    Consequences of Termination of the Settlement Agreement. If the Settlement Agreement is terminated for any reason specified in Section 9.1, the following shall occur:

9.2.1.    The Settlement Agreement and the Settlement shall be deemed void and of no further force and effect, with the Parties reserving all rights and returning to their respective positions on the day immediately before the Agreement Execution Date. Notwithstanding the foregoing, the following provisions of this Settlement Agreement shall remain in effect and shall survive the termination of the Settlement Agreement: Section 5.2 (Parties' Representations and Warranties); Section 5.3 (Signatories' Representations and Warranties); Article VI (No Admission of Liability); and this Article IX (Termination of the Settlement Agreement).

9.2.2.    The Action shall, for all purposes with respect to the Parties, revert to its status as of the day immediately before the Agreement Execution Date, including a lifting of any stay of the Action.

9.2.3    After payment of any Administrative Expenses as defined in paragraph 8.1, any funds remaining in the Gross Settlement Fund will be returned to Defendant. Plaintiff, Plaintiff's counsel and the Settlement Class shall in no event be liable for payment of such Administrative Expenses.

EXECUTION VERSION

## X.   ATTORNEYS' FEES AND EXPENSES

10.1.   <u>Application for Attorneys' Fees and Expenses</u>.  Plaintiff's Counsel may apply to the Court (a) for an award to Plaintiff's Counsel of attorneys' fees in an amount not to exceed one-third of the Class Settlement Amount, and (b) for reimbursement of out-of-pocket litigation expenses associated with this Action, in each case to be paid from the Class Settlement Amount of the Gross Settlement Fund.  Plaintiff's Counsel's attorneys' fees may include fees incurred in securing all necessary Court orders and approvals with respect to the Settlement Agreement.  Defendant will not take any position on Plaintiff's Counsel's application for fees or reimbursement of expenses.  Defendant does not agree or concede that the amount of attorneys' fees and/or any expenses that may be sought by Plaintiff's Counsel is appropriate or reasonable, but simply takes no position; moreover, nothing in this Settlement Agreement shall be construed otherwise.  The Parties acknowledge and agree that Defendant shall have no authority, control, or liability in connection with the Plaintiff's Counsel's attorneys' fees and/or expenses.

10.2.   <u>Disbursement of Attorneys' Fees and Expenses</u>.

   10.2.1. Following the Effective Date of Settlement and Court approval of Plaintiff's Counsel's motion for attorneys' fees and expenses, Plaintiff's Counsel may from time to time instruct the Financial Institution in writing to disburse payment of attorneys' fees and expenses from the Class Settlement Amount of the Gross Settlement Fund immediately.

   10.2.2. If, at the time of any disbursement from the Class Settlement Amount of the Gross Settlement Fund pursuant to Article VIII, there shall be a pending application for attorneys' fees or expenses, there shall be reserved in the Class Settlement Amount of the Gross Settlement Fund an amount equal to the amount of the pending application, until such time as the Court shall rule upon such application and such ruling shall become Final.

10.3.   <u>Case Contribution Awards</u>.  Following the Effective Date of Settlement, Plaintiff's Counsel may instruct the Financial Institution in writing to disburse payment of case contribution awards to the Named Plaintiff in an amount not to exceed $25,000 to be paid from the Class Settlement Amount of the Gross Settlement Fund, as approved by the Court.

## XI.   MISCELLANEOUS PROVISIONS

11.1.   <u>Governing Law</u>.  This Settlement Agreement shall be governed by the laws of the State of Illinois without giving effect to the conflict of laws or choice of law provisions thereof, except to the extent that the law of the United States governs any matter set forth herein, in which case such federal law shall govern.

11.2.   <u>Return of Materials</u>.  Each Party that received material designated "confidential" from an opposing Party or third party in the course of litigating this Action shall, within sixty (60) days after the Effective Date of Settlement, comply with its obligations under Section 14 of the Confidentiality Order (Dkt. 33) entered in the Action.

**EXECUTION VERSION**

11.3. <u>Severability</u>. The material provisions of this Settlement Agreement are not severable.

11.4. <u>Amendment</u>. Before entry of the Final Order, the Settlement Agreement may be modified or amended only by written agreement signed by or on behalf of all Parties. Following entry of the Final Order, the Settlement Agreement may be modified or amended only by written agreement signed by or on behalf of all Parties and approved by the Court.

11.5. <u>Waiver</u>. The provisions of this Settlement Agreement may be waived only by an instrument in writing executed by the waiving party. The waiver by any party of any breach of this Settlement Agreement shall not be deemed to be or construed as a waiver of any other breach, whether prior, subsequent, or contemporaneous, of this Settlement Agreement.

11.6. <u>Construction</u>. None of the Parties hereto shall be considered to be the drafter of this Settlement Agreement or any provision hereof for the purpose of any statute, case law, or rule of interpretation or construction that would or might cause any provision to be construed against the drafter hereof.

11.7. <u>Principles of Interpretation</u>. The following principles of interpretation apply to this Settlement Agreement.

    11.7.1. <u>Headings</u>. The headings of this Settlement Agreement are for reference purposes only and do not affect in any way the meaning or interpretation of this Settlement Agreement.

    11.7.2. <u>Singular and Plural</u>. Definitions apply to the singular and plural forms of each term defined.

    11.7.3. <u>Gender</u>. Definitions apply to the masculine, feminine, and neuter genders of each term defined.

    11.7.4. <u>References to a Person</u>. References to a Person are also to the Person's successors and assigns.

    11.7.5. <u>Terms of Inclusion</u>. Whenever the words "include," "includes," or "including" are used in this Settlement Agreement, they shall not be limiting but rather shall be deemed to be followed by the words "without limitation." The connectives "and," "or," and "and/or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of a sentence or clause all subject matter that might otherwise be construed to be outside of its scope. The terms "herein," "hereof," and the like shall be deemed to refer to this Settlement Agreement as a whole.

11.8. <u>Further Assurances</u>. Each of the Parties agrees, without further consideration, and as part of finalizing the Settlement hereunder, that he, she, or it will, in good faith, execute and deliver such other documents and take such other actions as may be necessary to consummate and effectuate the subject matter and purpose of this Settlement Agreement.

EXECUTION VERSION

11.9.  <u>Survival</u>.  All representations, warranties, and covenants set forth in this Settlement Agreement (including Articles IV, V, and VI hereof) shall be deemed continuing and shall survive the Effective Date of Settlement.

11.10.  <u>Notices</u>.  Any notice, demand, or other communication under this Settlement Agreement (other than the Class Notice, or other notices given at the direction of the Court) shall be in writing and shall be deemed duly given upon receipt if it is addressed to each of the intended recipients as set forth below and personally delivered, sent by registered or certified mail (postage prepaid), sent by confirmed facsimile, or delivered by reputable express overnight courier:

IF TO NAMED PLAINTIFF:
Gregory Y. Porter
Bailey & Glasser, LLP
1055 Thomas Jefferson Street, NW, Suite 540
Washington, DC 20007

IF TO THE DEFENDANT:
Theodore M. Becker
McDermott Will & Emery LLP
444 West Lake Street, Suite 4000
Chicago, IL 60606

IF TO THE SELLING SHAREHOLDERS/DIRECTORS:
David J. Bradford
Michael T. Graham
Jenner & Block LLP
353 North Clark Street, Suite 4500
Chicago, IL 60654

IF TO THE COMPANY:
Nancy G. Ross
Mayer Brown LLP
71 South Wacker Drive
Chicago, IL 60606

Any Party may change the address at which it is to receive notice by written notice delivered to the other Parties in the manner described above.

11.11.  <u>Entire Agreement</u>.  This Settlement Agreement contains the entire agreement among the Parties relating to the Settlement.  It specifically supersedes any settlement terms or settlement agreement relating to Named Plaintiff and Defendant that were previously agreed orally or in writing by any of the Parties.

11.12.  <u>Counterparts</u>.  This Settlement Agreement may be executed by exchange of faxed or electronically transmitted (.pdf) executed signature pages, and any signature transmitted by facsimile or .pdf for the purpose of executing this Settlement Agreement shall be deemed an original signature for purposes of this Settlement Agreement.  This Settlement

21

**EXECUTION VERSION**

Agreement may be executed in two or more counterparts, each of which shall be deemed to be an original, but all of which, taken together, shall constitute one and the same instrument.

11.13. <u>Binding Effect</u>.  This Settlement Agreement binds and inures to the benefit of the Parties hereto, their respective assigns, heirs, administrators, executors, and successors.

11.14. <u>Agreement Execution Date</u>.  The date on which the final signature is affixed below shall be the Agreement Execution Date.


[Signature pages follow]

**EXECUTION VERSION**

IN WITNESS WHEREOF, the Parties have executed this Settlement Agreement on the respective dates set forth below.

FOR NAMED PLAINTIFF

Dated: 12/17, 2019                    By: _____

FOR DEFENDANT

Dated: 12/17, 2019                    By: _____
                                      Charles R. Curley, Jr.
                                      Its: SVP and Corporate Secretary


FOR THE COMPANY

Dated: _____, 2019                    By: _____

                                      Its: _____


FOR RICHARD TINBERG

Dated: _____, 2019                    By: _____


FOR JAMES LIGGETT

Dated: _____, 2019                    By: _____


FOR JOHN MACARTHUR

Dated: _____, 2019                    By: _____


23

DM US 164622597-1 082961 0020

**EXECUTION VERSION**

IN WITNESS WHEREOF, the Parties have executed this Settlement Agreement on the respective dates set forth below.

FOR NAMED PLAINTIFF

Dated: _____, 2019                          By: _____

FOR DEFENDANT

Dated: _____, 2019                          By: _____

                                            Its: _____

FOR THE COMPANY

Dated: Dec. 17, 2019                        By: _____

                                            Its: Vice President

FOR RICHARD TINBERG

Dated: _____, 2019                          By: _____

FOR JAMES LIGGETT

Dated: _____, 2019                          By: _____

FOR JOHN MACARTHUR

Dated: _____, 2019                          By: _____

23

**EXECUTION VERSION**

IN WITNESS WHEREOF, the Parties have executed this Settlement Agreement on the respective dates set forth below.

FOR NAMED PLAINTIFF

Dated: _____, 2019                     By: _____

FOR DEFENDANT

Dated: _____, 2019                     By: _____

Its: _____

FOR THE COMPANY

Dated: _____, 2019                     By: _____

Its: _____

FOR RICHARD TINBERG

Dated: 12/17, 2019                     By: _Richard W. Tinberg_

FOR JAMES LIGGETT

Dated: _____, 2019                     By: _____

FOR JOHN MACARTHUR

Dated: _____, 2019                     By: _____

23

**EXECUTION VERSION**

IN WITNESS WHEREOF, the Parties have executed this Settlement Agreement on the respective dates set forth below.

FOR NAMED PLAINTIFF

Dated: _____, 2019

By: _____

FOR DEFENDANT

Dated: _____, 2019

By: _____

Its: _____

FOR THE COMPANY

Dated: _____, 2019

By: _____

Its: _____

FOR RICHARD TINBERG

Dated: _____, 2019

By: _____

FOR JAMES LIGGETT

Dated: 12/17, 2019

By: _____

FOR JOHN MACARTHUR

Dated: _____, 2019

By: _____

23

**EXECUTION VERSION**

IN WITNESS WHEREOF, the Parties have executed this Settlement Agreement on the respective dates set forth below.

FOR NAMED PLAINTIFF

Dated: _____, 2019                    By: _____

FOR DEFENDANT

Dated: _____, 2019                    By: _____

                                      Its: _____

FOR THE COMPANY

Dated: _____, 2019                    By: _____

                                      Its: _____

FOR RICHARD TINBERG

Dated: _____, 2019                    By: _____

FOR JAMES LIGGETT

Dated: _____, 2019                    By: _____

FOR JOHN MACARTHUR

Dated: Dec. 17, 2019                  By: _____

23

**EXECUTION VERSION**

## EXHIBITS TO THE SETTLEMENT AGREEMENT

Exhibit 1       Preliminary Approval Order
                    Exhibit A to the Preliminary Order: Class Notice